In re Dwight Arthur DAVIS (Davis Lumber Company) and Audrey Jane Davis, Debtors.

The HOWARD BANK, Plaintiff,

v.

Dwight Arthur DAVIS (Davis Lumber Company) and Audrey Jane Davis, Defendants.

Bankruptcy No. 80-00228.
Adv. No. 80-0135.

United States Bankruptcy Court,
D. Vermont.

Dec. 11, 1980.

S. Stacy Chapman, III of Webber & Costello, Rutland, Vt., for plaintiff.

Eugene Rakow, Rutland, Vt., for debtors-defendants.

### FINDINGS OF FACT AND MEMORANDUM

CHARLES J. MARRO, Bankruptcy Judge.

This is an adversary proceeding to determine dischargeability of debt. It is predicated on § 523(a)(2) of the Bankruptcy Code which makes non-dischargeable the debt of an individual debtor for obtaining money, property, services or an extension, renewal or refinance of credit, by false pretenses, false representation or actual fraud other than a statement respecting the debtor's or an insider's financial condition.

### FINDINGS OF FACT

The defendants filed a petition for relief under Chapter 7 of the Bankruptcy Code on October 17, 1980.

On June 28, 1979 the debtors borrowed from the plaintiff the sum of $3,500.00 which was evidenced by a promissory note signed by them in the face amount of $3,954.60 which included interest and was payable in monthly installments of $219.70 beginning July 30, 1979 and ending January 30, 1981.

As security for this note the debtors executed and delivered to the plaintiff a security agreement dated June 28, 1979 granting to the plaintiff a security interest in one used 1964 Laraine fork lift which was perfected by the filing on June 29, 1979 of financing statements in the offices of the Town Clerk of Hubbardton, Vermont and of the Secretary of State.

The loan was closed in behalf of the bank by Theodore Thompson, its loan officer, and he attended to the execution of the note and the security agreement.

The fork lift was used in logging operations by the debtor, Dwight A. Davis, and in August, 1979 he began to have problems with this piece of equipment in that it sprang hydraulic leaks and it would often take as much as four hours to start.

At about the same time and during the month of August, 1979, Theodore M. Thompson visited the place of business of the debtor to buy some lumber and to review the operation being conducted by the debtor. During this visit he learned of the difficulty that the debtor was encountering with the fork lift and the debtor indicated to him that he intended to trade it to an equipment dealer who was there present and examining the fork lift.

In fact the debtor did not trade in the fork lift but rather in December, 1979, without notice to the plaintiff bank sold the piece of equipment at private sale to one Marshall Squires. He received $3,000.00 for it and from the proceeds, he did on December 21, 1979 make seven payments of $219.70 each to the plaintiff bank for a total of $1,537.90. He used the balance received from the sale in the operation of his business with the expectation of generating enough cash to pay off the balance of the indebtedness.

At that time he had good expectation for growth in his business and he was shipping orders regularly. However, problems developed subsequently with his profit margin and orders with one of his customers, Northern Pacific, were cancelled. As a result he was unable to make any further payments to the plaintiff although he fully intended to do so when he sold the fork lift.

Prior to the sale of the fork lift to Squires the debtor had no communication with the plaintiff as to his intention to dispose of it at private sale; he did not obtain a release of the security interest and he did not subsequently reveal to the bank voluntarily that he had sold the equipment to Squires.

Some time after the sale the debtor was having financial difficulties and he did make application to the plaintiff for a consolidation loan which was refused.

The seven installment payments on December 21, 1980 were made without the knowledge of loan officer Thompson and they were not accepted as satisfaction in full of the indebtedness secured by the fork lift.

In the event of sale of collateral by a debtor the plaintiff, as a matter of policy, would not release its security interest without prior knowledge of the terms of the sale and approval.

The balance due from the debtor to the plaintiff under the secured promissory note is $1,520.41 plus $15.00 late charges for a total of $1,535.41.

## MEMORANDUM

Under the established facts the plaintiff is not entitled to damages. It bases its claim on that portion of Section 523(a)(2) of the Bankruptcy Code which excepts from a discharge a debt for obtaining money, property, services by false pretenses, a false representation or actual fraud. There are neither allegations in the complaint nor proof of false pretenses or a false representation. Therefore, the plaintiff must necessarily rely on the establish-

ment of actual fraud. As to this it carries a heavy burden. Proof of a "technical conversion" which lacks the elements of wilfulness and maliciousness is not enough. See *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 331–2, 55 S.Ct. 151, 152–53, 79 L.Ed. 393 in which Justice Cardozo observed ". . . . . . a wilful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances. There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without wilfulness or malice . . . an honest or mistaken belief."

■ The conduct of the debtor in selling the fork lift without authority from the plaintiff and payment in full of the balance due fits perfectly in the definition of a technical conversion without wilfulness or malice as defined by Justice Cardozo in the *Davis* case. At the time of the sale the debtor actually paid the plaintiff about one half of the balance due on the secured indebtedness; he also fully intended at that time to pay off the remaining sum due from the anticipated income from his business which, although not flourishing, was adequate. Further he used that part of the purchase price not turned over to the plaintiff in the operation of his business so that he could generate the necessary income to satisfy the indebtedness. There was no conversion of the money to the debtor's personal use. Unfortunately the business came upon hard times and as a result the debtor was unable to carry out his good intentions.

It is true that the *Davis* case was decided long before the present Bankruptcy Code was enacted. It related to the interpretation of Section 17(a)(2) of the former Bankruptcy Act which excepted from discharge debts "for wilful and malicious conversion of the property of another". This exception was not enacted in haec verba by the Code but it is included in Sec. 523(a)(6) which excepts from discharge a debt for wilful and malicious injury. As a result case law construing Sec. 17(a)(2) of the Act may be considered by the Court in its interpretation and explanation of Section 523(a)(6) of the Code. *In re Green*, (N.D. Georgia–1980) 5 B.R. 247, 2 CBC 2d 905; *In re Miller*, (W.D. Louisiana–1980) 5 B.R. 424, 2 CBC 2d 849.

■ The plaintiff, however, did not choose to bring itself within the purview of Sec. 523(a)(6) of the Code which appears to be more pertinent to its case. Rather it seeks relief under subdivision 2 of Sec. 523(a) and is thereby charged with the burden of establishing actual fraud. This, by definition, consists of any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another—something said, done or omitted with the design of perpetrating what is known to be a cheat or deception. 3 Collier 15th Edition 523–47; Black's Law Dictionary. The evidence submitted does not justify a finding of actual fraud.

■ The plaintiff argued at the hearing that the Court could imply fraud. This is contrary to the settled law. The addition of the words "or actual fraud" in the Code as a ground for exception to the discharge makes no change in law as it previously existed because false pretenses and representations were construed to mean acts involving moral turpitude or intentional wrong; fraud implied in law, which may exist without imputation of bad faith or immorality, was held to be insufficient. 3 Collier 15th Ed. 523–47; *In re Dolnick*, 374 F.Supp. 84 (N.D.Ill.1974). See also *In re Taylor*, 514 F.2d 1370 (9th Cir. 1975) in which the Court said:

"This fraud is the type involving moral turpitude or intentional wrong, and thus there can be no mere imputation of bad faith."

■ The plaintiff is further laden with the obligation of overcoming the established rule enunciated in *Neal v. Clarke*, 95 U.S. 704, 24 L.Ed. 586 and *Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 that exceptions to discharge should be construed in favor of the debtor. This is in harmony with the basic purpose of the Bankruptcy Act which is to give the debtor a new opportunity in life and a clear field for future effort, unhampered by the pressure

and discouragement of preexisting debt. *Lines v. Frederick*, 400 U.S. 18, 19, 91 S.Ct. 113, 114, 27 L.Ed.2d 124.

The views herein expressed as to the necessity of establishing wilful and malicious intent on the part of the debtor are supported in the analogous and most recent case of *Liberty National Bank and Trust Company v. Hawkins*, (W.D. Kentucky–1980), 6 B.R. 97, 6 BCD 1054. In this case the secured creditor had a security interest in a car for $800.00 which was sold by the debtors for only $300.00 and they remitted only a portion of the proceeds to the creditor. Upon a complaint under Section 523(a)(6) of the Code excepting from discharge any debt "for wilful and malicious injury by the debtor to another entity or to the property of another entity" the Court decided in favor of the debtor. It pointed out that under Section 17(a)(2) of the Bankruptcy Act of 1898, the forerunner of Sec. 523(a)(6) of the Code, a debt for wilful and malicious conversion of the property of another was not dischargeable. This, the Court said, was construed to mean that the conversion of one's property without his knowledge or consent, done intentionally and without justification or excuse to the other's injury, was considered a wilful and malicious injury. *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754. The Court pointed out further that *Tinker* was upheld in *Bennett v. W. T. Grant* (4th Cir.), 481 F.2d 664 which essentially stood for the proposition that while not every act of conversion was necessarily wilful and malicious, if the act was done deliberately and intentionally in knowing disregard of the rights of another, the debt was nondischargeable. The Court then observed that in the House and Senate Reports involving discussion of the Bankruptcy Code, the "knowing disregard" standard was expressly overruled and that the cases upholding the "reckless disregard" standard in construing section 17(a)(2) of the Bankruptcy Act are not applicable in interpreting section 523(a)(6). 3 Collier 15th Ed. Para. 523.-16(3). Summarizing, the Court in the *Liberty National Bank* case said at page 99 of 6 B.R., at page 1055 of 6 BCD:

"It was well settled under former law and it continues to be true that the exceptions set forth in § 17(a)(2) of the Bankruptcy Act (§ 523[a][6] of the 1978 Code) are to be strictly and literally construed so as to discharge all debts except those specifically within the exceptions. *Davison-Paxon Co. v. Caldwell*, 115 F.2d 189 (5th Cir., 1940); *Gleason v. Thaw*, 236 U.S. 558, [35 S.Ct. 287, 59 L.Ed. 717] (1915); *Sweet v. Ritter Finance Co.*, 263 F.Supp. 540 (W.D.Va., 1967).

"It is true that to accept statements of honest motives and innocent intent without 'additional evidence, clear and convincing in character, would result in affording an easy method of frustrating the purposes of the law.' *In re Monsch*, 18 F.Supp. 913 (E.D.Ky., 1937.) The Court is not bound to accept self-serving testimony. *In re Bebar*, 315 F.Supp. 841 (E.D.N.Y., 1970).

"In this case, the debtor cannot say that he sold the Ford automobile accidentally. If he did not sell the automobile accidentally, then logically he must have converted the interest of plaintiff deliberately and intentionally, or willfully. While the debtor may have willfully sold the property, he does not appear to have done so maliciously. In fact, the debtor remitted to the plaintiff part of the proceeds he received from the sale of the property. This court, though not bound to accept self-serving statements of motive, cannot hypothesize further the intent of the debtor.

"The debtor may well be guilty of conversion under the *Tinker* reasoning that this conversion was a 'reckless disregard' of his duty. However, he is clearly not chargeable under the standard of 'willful and malicious injury' applicable to § 523(a)(6) of the Bankruptcy Code."

The complaint should be dismissed.