In the Matter of Elden Bernard LANGER and Dorothy May Langer, Bankrupts.

UNITED STATES of America, Creditor-Appellant,

v.

Elden Bernard LANGER and Dorothy May Langer, Bankrupts-Appellees.

Bankruptcy No. 80–05013.
Adv. No. A3–81–67.

United States District Court,
D. North Dakota,
Southeastern Division.

July 17, 1981.

Jon M. Arntson, Ohnstad, Twichell, Breitling, Arntson & Hagen, West Fargo, N.D., for creditor-appellant.

Garry Annear, Asst. U. S. Atty., James R. Britton, U. S. Atty., Fargo, N.D., for bankrupts-appellees.

## MEMORANDUM DECISION AND ORDER

PAUL BENSON, Chief Judge.

The above entitled matter is before the court on appeal by the United States from

the bankruptcy court's judgment dismissing its complaint objecting to the discharge of an obligation owing it by the bankrupts. Appellant alleged that as a result of the bankrupts having sold grain which had been mortgaged to appellant, a judgment was entered in its favor. Appellant further alleged that the debt arising from the judgment was for a conversion of property and therefore, not dischargeable in bankruptcy. Following a trial, the bankruptcy court made its written findings of fact and concluded that the bankrupts' act of selling the mortgaged grain was not "malicious" as required by the Bankruptcy Reform Act of 1978, 11 U.S.C. § 523(a)(6).[1]

█ Mindful that the right to a discharge in bankruptcy is addressed to the sound discretion of the bankruptcy court and that appellate courts should interfere only for the most compelling reasons, this court, after reviewing the record in the case, is of the view that the bankruptcy court was correct in both its determination of the controlling law and its application thereof to the facts of this case.[2]

The bankruptcy court found the following facts, which are not alleged to be erroneous.[3]

On February 16, 1978, the bankrupts borrowed $50,000 from the United States through the Farmers Home Administration as a crop production loan, and in return executed a note and a security agreement giving the United States a security interest in their 1978 crop. From October, 1978 to January, 1979, the bankrupts entered into several transactions selling grain from their 1978 crop without the consent of the appellant. The proceeds from the sales were partly applied to the FHA loan, and partly applied to accounts at the elevators which purchased the grain. Only a small amount of the proceeds was actually received by the bankrupts. The sales were deliberately and intentionally made, and when they were made, the bankrupts knew the grain was mortgaged. The bankrupts later failed to make payments in accordance with the terms of the note, and the United States secured a judgment against the bankrupts in United States District Court on November 13, 1979, in the amount of $29,726.39 plus interest. On January 9, 1980, the bankrupts filed a voluntary petition in bankruptcy.

Section 523(a) of the Revised Bankruptcy Act, Title 11, U.S.C., provides in part as follows:

A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity . . . .

Section 17(a)(2) of the prior act contained a similar provision under which it was generally established that an improper disposition of secured property was a basis for excepting a debt from discharge if such a conversion was willful and malicious. *See e. g., Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934); *In re McGinnis*, 586 F.2d 162 (10th Cir. 1978); *Robertson v. Interstate Securities Company*, 435 F.2d 784 (8th Cir. 1971). This also appears to be true under the new Act. *See e. g., In re Auvenshine*, 9 B.R. 772 (W.D.Mich.1981); *In re McCloud*, 7 B.R. 819 (M.D.Tenn.1980); *In re Hawkins*, 6 B.R 97 (W.D.Ky.1980); *In re Hodges*, 4 B.R. 513 (W.D.Va.1980). The central issue before the bankruptcy court was whether the bankrupt's conversion of the secured grain was willful and malicious.

---

1. The debtor's voluntary petition was filed on January 9, 1980. Thus, the new Bankruptcy Act, rather than the prior act, is applicable.

2. Although Bankruptcy Rule 809 makes provision for oral argument on appeal, no request was made, and the court is of the opinion that the issues are well briefed and no argument is necessary.

3. Appellant does not challenge any of the bankruptcy court's factual findings as being clearly erroneous. Rather it is contended that the court erred in reaching its legal conclusions from those facts.

■ The bankruptcy court reasoned that the new Bankruptcy Act requires a more stringent standard in dealing with the non-dischargeability provision than was applicable under the old act. In *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904), the Court held that a judgment against the bankrupt for damages arising from a criminal conversation with the plaintiff's wife had been based upon a willful and malicious injury to the plaintiff's property rights and thus, was not dischargeable in bankruptcy. The element of willfulness was not in issue in *Tinker*; the Court stated that the act had been intentional and voluntary and thus clearly had been willful for the purpose of the exception. The issue was whether the act was malicious.

> [W]e think a willful disregard of what one knows to be his duty, an act which is against good morals, and wrongful in and of itself, and which necessarily causes injury and is done intentionally, may be said to be done wilfully and maliciously, so as to come within the exception.

*Id.* at 487, 24 S.Ct. at 509. From the above quoted language contained in *Tinker*, lower courts had held in cases involving automobile accidents that a "reckless disregard" to the rights of others came within the definition of willfulness. *E. g., Haerynck v. Thompson*, 228 F.2d 72, 74 (10th Cir. 1955); *Harrison v. Donnelly*, 153 F.2d 588, 591 (8th Cir. 1946). It is doubtful that *Tinker* was intended to be read so expansively. In any event, when the new Bankruptcy Code was enacted, Congress made it clear that such an interpretation was not warranted.

> Paragraph (6) excepts debts for willful and malicious injury by the debtor to another person or to the property of another person. Under this paragraph, "willful" means deliberate or intentional. To the extent that *Tinker v. Colwell*, 193 U.S. 473 [24 S.Ct. 505, 48 L.Ed. 754] (1902) [sic], held that a looser standard is intended, and to the extent that other cases have relied on *Tinker* to apply a "reckless disregard" standard, they are overruled.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 365 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6320. Similar language is contained in Senate Report No. 95–989, 95th Cong., 2d Sess. 79 (1978), U.S. Code Cong. & Admin.News 1978, p. 5865. Therefore, it is clear from the legislative history, as it should have been clear from *Tinker*, that *"willful"* requires intentional and deliberate action. But nowhere in the legislative history is there expressed any intention to depart from the definition of "malicious" used in the prior act. This court disagrees with the bankruptcy court's opinion insofar as it can be read to imply otherwise. *See In re McCloud, supra,* 7 B.R. at 825.

■ The bankruptcy court properly concluded that since the grain sales were deliberately made with knowledge of the security interest, the bankrupts' acts were willful within the meaning of § 523(a)(6). The court further concluded, however, that malice is defined as a specific intent to harm the mortgagee, and that no such intent could be gleaned from the facts as found by the court.

The definition of malice generally used under the prior act has been stated as follows:

> An injury to person or property may be a malicious injury within this provision if it was wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill will. The word "wilful" means nothing more than intentionally doing an act which necessarily leads to injury. Therefore, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury.

Colliers on Bankruptcy § 17.17[1] (14th ed. 1978). *See Matter of Dardar*, 620 F.2d 39, 40 (5th Cir. 1980). *See also* Colliers on Bankruptcy § 523.16 (15th ed. 1980). It is apparent that the definition does not render itself to easy application.

In *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934) the Court was faced with a similar situation in which the bankrupt committed an act of conversion by an unauthorized sale of se-

cured property. In upholding the lower court's finding of no malice, the court held that "a wilful and malicious injury does not follow as of course from every act of conversion without reference to the circumstances. There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without wilfulness or malice." *Id.* at 332, 55 S.Ct. at 153. "The discharge will prevail as against a showing of conversion without aggravated features." *Id.* at 333,[4] 55 S.Ct. at 153.

The term "malicious" has no fixed meaning in cases where secured property is sold by a mortgagor. As stated in *Davis*, such is best left to the particular circumstances of each case, keeping in mind that the main purpose of the Bankruptcy Act is to let an honest debtor begin his financial life anew. *Bruning v. United States*, 376 U.S. 358, 361, 84 S.Ct. 906, 908, 11 L.Ed.2d 772 (1964). Furthermore, the provision of the Act relating to discharge should be construed liberally in favor of the bankrupt and against the objecting creditor. *In re Jones*, 490 F.2d 452, 456 (5th Cir. 1974); *In re Pioch*, 235 F.2d 903, 905 (3rd Cir. 1956). In light of *Davis*, and the legislative history behind the new Code, this court agrees with the bankruptcy court's conclusion that for malice to exist there must be some *intentional* disregard for the rights of another. *See In re Hawkins, supra* 6 B.R. at 99 (intent to do harm necessary for malice); *In re Hodges*, 4 B.R. at 516 (malice must encompass an intent to harm the creditor).

In *In re Hodges, supra*, the debtors sold a secured stereo at a flea market. At the time they knew that the mortgagee held rights to the stereo. The issue was whether the debt for the stereo was dischargeable under § 523(a)(6). Since the stereo was not sold accidentally, the court concluded it was converted deliberately and intentionally, and thus possibly willfully. However, since the debtors intended to continue making payments to the mortgagee, there was no

intent to harm, and thus no malice. 4 B.R. at 517.

The court in *In re Hawkins, supra*, faced a similar situation. There, the debtor purchased an automobile with borrowed money, giving the lender a security interest. The automobile was involved in a collision and was wrecked, whereupon the debtor sold it for parts without the consent of the mortgagee. The court found that the automobile was sold intentionally, and thus willfully converted. Yet the court concluded there was no malice in the sense of an intent to harm the mortgagee since the debtor remitted to the mortgagee part of the proceeds he received from the sale of the property. 6 B.R. at 99.

In the instant case, the bankruptcy court found that of the nearly $36,000 the bankrupts received from the unauthorized sale of the grain, nearly $10,000 was applied to the FHA loan and another $5,000 was used to cover an advance made to the bankrupts which had been applied to the FHA loan. Most of the remaining proceeds were applied to creditors who were pressing the bankrupts for payment. The bankruptcy court could reasonably conclude from these circumstances that the bankrupts had no intent to financially harm the United States, and thus harbored no malice.

Cases contrary to *In re Hawkins* and *In re Hodges*, cited by appellant are distinguishable. In *In re Auvenshine*, 9 B.R. 772 (W.D.Mich.1981), the debtors sold a secured washer and dryer and applied the proceeds to purchase an automobile. In *In re McCloud*, 7 B.R. 819 (M.D.Tenn.1980), where the debtor sold secured cattle without the mortgagee's consent, the court made no mention of what was done with the proceeds.

The question of a bankrupt's right to a discharge is addressed to the sound discretion of the bankruptcy court, and this court

---

4. In civil tort law, the intent required for a conversion is not necessarily a matter of conscious wrongdoing. It is rather an intent to exercise a dominion or control over the goods which is in fact inconsistent with the owner's rights. A mistake of law or fact is no defense. Prosser, Law of Torts § 15 (4th ed. 1971). This explains how one can be guilty of a conversion without the existence of malice.

will not interfere with the exercise of such discretion except for gross abuse. *Tenn v. First Hawaiian Bank*, 549 F.2d 1356, 1357 (9th Cir. 1977), *cert. denied*, 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977); *In re Jones, supra* 490 F.2d at 456; *In re Moran*, 456 F.2d 1030, 1031 (3d Cir. 1972), *cert. denied*, 409 U.S. 872, 93 S.Ct. 201, 34 L.Ed.2d 123 (1972). Therefore, this court may not substitute its own judgment for that of the bankruptcy court. In light of the facts found by the bankruptcy court, this court holds that in concluding that the government had failed to prove that the bankrupts had acted with malice, the bankruptcy court did not abuse its discretion.

IT IS ORDERED that the judgment of the bankruptcy court is AFFIRMED.