**In the Matter of Carmen Lee LEWIS and Betty Joyce Lewis, Debtors.**

**CITIZENS BANK AND TRUST COMPANY OF FLIPPIN, ARKANSAS, Plaintiff,**

v.

**Carmen L. LEWIS, Defendant.**

**Adv. No. 81–344.**

United States Bankruptcy Court, W. D. Arkansas, Harrison Division.

Oct. 11, 1981.

Dale Shoup, Flippin, Ark., for plaintiff.

Claude R. Jones, Harrison, Ark., for defendant.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL DECREE OF DISCHARGEABILITY OF DEFENDANT'S INDEBTEDNESS TO PLAINTIFF IN THE SUM OF $997.60

DENNIS J. STEWART, Bankruptcy Judge.

The plaintiff filed its complaint herein on May 21, 1981, alleging that an indebtedness owed to it by the defendant is nondischargeable in bankruptcy as resulting from

the sale of property in which the plaintiff held a security interest. It was alleged in the complaint that on February 18, 1977, the defendant and his spouse, the debtor Betty Joyce Lewis, had borrowed the sum of $5,685.60 from the plaintiff, in return for which they had executed a security agreement in favor of the plaintiff. Under the terms of that security agreement, the plaintiff was given a security interest in "(a)ny and all equipment now owned or acquired, including attachments, replacements, and accessories, during the life of this lien." To perfect this security interest, the plaintiff filed financing statements in the office of the county clerk of Baxter County and in the office of the Arkansas Secretary of State purporting to cover the following described property:

"Any and all equipment, inventory and accounts receivable now owned or acquired, including any attachments, replacements, and accessories, during the life of this lien, until paid in full." [1]

In the complaint, the plaintiff alleges that the nondischargeable liability was created when the defendant "disposed of the items secured by the security agreements and the UCC–1 forms without knowledge or consent of Plaintiff and he failed to apply the proceeds received to the obligation." Relevantly, the security agreement, a copy of which is attached to the plaintiff's complaint, provides that the defendant and his spouse may sell inventory so long as they are not in default in their payments under the security agreement.[2]

In his answer to the complaint, the defendant admits the material factual allegations above summarized, except as they allege proper perfection of the security interest, and raises the following as an affirmative defense:

"Defendant pleads in the affirmative that plaintiff had actual knowledge in late 1977 or early 1978 that defendant's business had terminated; that plaintiff knew that all equipment securing said promissory note was disposed of at the time defendant's business terminated; that proceeds from said disposition were paid to plaintiff in accordance with the monthly payment schedule until all proceeds of the disposition were exhausted; and that plaintiff, with the full knowledge that defendant's business was closed and all items associated therewith as security for said promissory note were liquidated, gave implied consent to defendant's sale of said goods and should now be estopped from denying such consent."

By means of the order entered in this action on September 28, 1981, a hearing on the issues thus joined was set for October 8, 1981, in Harrison, Arkansas. On the date of the hearing, the parties appeared by counsel before the court (the plaintiff by Dale Shoup, Esquire, and the defendant by Claude R. Jones, Esquire) and presented the following written stipulation of facts and evidence, stating that the action was being submitted to the court for decision on the basis of the stipulation:

"Comes now Dale Shoup, Attorney for Citizens Bank & Trust Company and comes now Claude R. Jones, Attorney for Carmen L. Lewis, and would stipulate that the testimony and evidence is as follows:

1. That upon the 18th day of February 1977 Carmen L. Lewis (along with his wife, Catherine Lewis) executed a note for $5,685.60 which note was secured by security agreement recorded in both Baxter County, Arkansas and with the Secretary of State, securing the inventory, furniture and fixtures of the Stop and Shop Store operated by Carmen L. Lewis in Cotter, Arkansas.

---

1. By means of other, boilerplate terms of the same instrument, a security interest in inventory and accounts receivable was also given to the plaintiff by the defendant and his spouse.

2. Paragraph 5 of the security agreement pertinently provides: "So long as Borrower is not in default hereunder, Borrower shall have the right, in the regular course of business, to process and sell Borrower's Inventory. Bank's security interest hereunder shall attach to all proceeds of all sales or other dispositions of Borrower's Inventory."

2. That Carmen L. Lewis sold the inventory and the furniture and fixtures sometime in late 1977 or early 1978, the exact date being known, without expressed permission.

3. That at the time Carmen L. Lewis sold the inventory, furniture and fixtures, there was a balance owed to Citizens Bank & Trust Company of $4,506.10.

4. That after the sale Carmen L. Lewis made 35 payments on the note to Citizens Bank & Trust Company, the last of which was on the 16th day of December, 1980 and at that time the principal unpaid balance was $997.60."

■ Based upon the foregoing factual stipulations, it is clear that the only conceivable ground for nondischargeability of defendant's indebtedness to plaintiff is that of willful and malicious injury to property (which includes conversion) under section 523(a)(6) of the Bankruptcy Code. Under the former Bankruptcy Act, this exception to discharge often proved to be one which the creditor could prove and thereby obtain a decree of nondischargeability of the bankrupt's indebtedness to him. For, under the former law, "willful and malicious" had been given a meaning by case law which recognized the difficulties in proving subjective willfulness and malice. It was thus held that, "(i)n order to come within that meaning as a judgment for a wilful and malicious injury to person or property, it is not necessary that the cause of action be based upon special malice, so that without it the action could not be maintained." *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1902). See also 1A Collier on Bankruptcy para. 17.17(1), pp. 1650.4, 1653, 1654 (1976), to the following effect:

"An injury to person or property may be a malicious injury within this provision if it was wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill will. The word 'wilful' means nothing more than intentionally doing an act which necessarily leads to injury. Therefore, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury . . . . Thus, the conversion of another's property without his knowledge or consent, done intentionally and without justification and excuse, to the other's injury, is a willful and malicious injury within the meaning of the exception."

The legislative history under section 523(a)(6) of the new Bankruptcy Code, however, expressly rejects these principles and the case law which asseverated them. "Under this paragraph, 'willful' means deliberate or intentional. To the extent that *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1902), held that a looser standard is intended, and to the extent that other cases have relied on *Tinker* to apply a 'reckless disregard' standard, they are overruled." Legislative History to Section 523(a)(6), Title 11, United States Code. In consequence of the publication of this new standard, the district courts, even in cases originating under the old Bankruptcy Act, have commenced to apply a rigid subjective standard which all but rules out the plaintiff's ability to prove wilfulness and malice except by the defendant's own admission. See, e.g., *In re Bellmer*, Civil Action No. 79–6042–CV–SJ (W.D.Mo.1980), to the effect that "the 'willful and malicious' requirement of the statute is meant to impose the necessity of finding a *subjective*, conscious intent." (Emphasis added.) Thus, when a defendant has disposed of collateral without permission but with some notion, however erroneous it would appear to be, that he has a right to dispose of it, there can be no finding of willful and malicious conversion. See *Matter of Roberts*, 8 B.R. 291, 293 (W.D.Mo.1981) ("A good faith belief, even though unreasonable, precludes a wilful and malicious intent."). Regardless of the seeming unfairness of this new rule, which appears to abolish section 523(a)(6) of the Code as a meaningful ground of nondischargeability, this court can only apply the law which is applicable. No court can be

wiser than the law which it is bound to effect.[3]

Further, in the case at bar, there are separate and independent reasons for denying the complaint of the plaintiff. As has been noted above, the defendant has contended, in his answer to the complaint, that he applied the proceeds of the sale against the indebtedness owed to the plaintiff to the point that those proceeds were exhausted. This would tend to show that there was no subjective, conscious intention to convert the property of the plaintiff. It would further tend to show the absence of any conversion when there appear to be no restrictions in the security agreement against disposition of the property so long as the proceeds are applied in accordance therewith. And the stipulation of the parties, as quoted above, is wholly in consonance with this defense. For it is to the effect that the balance due the plaintiff on the security agreement was reduced in accordance with its terms for 35 payments subsequent to the disposition of the collateral. It is nowhere in the stipulation suggested that the proceeds of the disposition of the collateral were not fully applied against the indebtedness owing to the plaintiff.

Finally, the defendant's liability to plaintiff, if any, for conversion is not to be measured by the remaining balance due on the security agreement, without more. Rather, the liability for conversion is to the extent of the value of the property converted. There is nothing in the pleadings or in the stipulation filed by the parties on October 8, 1981, which constitutes any indication of that value. In a conversion case, the plaintiff bears the burden of proving this value. Therefore, even if it could be concluded that there has been a willful and malicious conversion in this case (and, for the foregoing reasons, such a conclusion cannot be made) the damages, if any, suffered by reason of the conversion have not been established. Therefore, the judgment in this case must be for the defendant.

3. As is noted in the above quoted portions of the defendant's answer, he professes to believe that he had "implied consent" to dispose of the collateral by reason of the plaintiff's knowledge

Accordingly, it is hereby

ADJUDGED AND DECREED that plaintiff's complaint for a decree of nondischargeability of the defendant's indebtedness to plaintiff in a sum of $997.60 be, and it is hereby, denied and it is accordingly decreed that the same indebtedness is dischargeable in bankruptcy.

and acquiescence. There is nothing in the stipulation which would be said to contradict this good faith claim of right.