In re Anthony DeROSA, f/d/b/a A D Auto Wholesalers and Joann P. DeRosa, Debtors.

CAR VILLAGE BUICK–OPEL, INC., Plaintiff,

v.

Anthony DeROSA, Defendant.

Bankruptcy No. 80–30486.
Adv. No. 80–7091.

United States Bankruptcy Court,
S. D. New York.

April 20, 1982.

Corbally, Gartland & Rappleyea, Poughkeepsie, N. Y., for plaintiff; Jon H. Adams, Poughkeepsie, N. Y., of counsel.

Feinman & Greher, Newburgh, N. Y., for defendant; Warren Greher, Newburgh, N. Y., of counsel.

## DECISION ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF A DEBT UNDER CODE § 523(a)

JEREMIAH E. BERK, Bankruptcy Judge.

Plaintiff, CAR VILLAGE BUICK–OPEL, INC., an alleged secured creditor, seeks a judgment excepting its debt of $12,-539.00 from discharge pursuant to § 523(a)(2)(A), § 523(a)(4), and § 523(a)(6) of the Bankruptcy Reform Act of 1978 (hereinafter "Bankruptcy Code" or "Code"). Although the debtor-defendant, Anthony DeRosa, did not appear at trial, his deposition taken during pre-trial discovery proceedings on April 24, 1981 has been stipulated in evidence. Immediately upon the conclusion of plaintiff's case, counsel for defendant rested without offering any testimony in opposition. Upon the pleadings, pre-trial stipulations, testimony and documentary evidence introduced at trial, and the post-trial memorandum submitted by each party, it is found that plaintiff has failed to sustain its burden of proof as to each exception to discharge claimed, and for the following reasons the debt is discharged.

### FINDINGS OF FACT

1. On September 30, 1980, Anthony DeRosa, a licensed automobile dealer, filed a voluntary joint petition for liquidation under Chapter 7 of the Bankruptcy Code and scheduled plaintiff as an unsecured creditor therein. Thereafter, plaintiff commenced the within adversary proceeding seeking to except its debt from discharge alleging false and fraudulent representations, larceny, and willful and malicious injury pursuant to Code § 523(a).

2. On August 9, 1979 defendant purchased from plaintiff a new 1979 Buick automobile for a cash price of $10,794.93, and a total deferred price of $14,531.97. The parties had had no prior business dealings. At the time of purchase defendant was engaged as a sole proprietor in the wholesale and retail automobile business under the trade name "A D Auto Wholesalers," and had been so engaged for approximately three to four years prior thereto. Defendant represented that he was acquiring the automobile for resale to a prospective customer. The purchase order and the invoice prepared by plaintiff recite defendant's trade name and categorize the transaction as "dealer-to-dealer." As such, the transaction was exempt from New York State sales tax and no sales tax was charged to defendant.

3. The purchase was financed through Marine Midland Bank (hereinafter "Bank"). As part of the purchase transaction, defendant executed the Bank's form Retail Instalment Contract in his individual name and paid the agreed sum of $94.93 to plaintiff as the cash down payment. The Retail Instalment Contract nowhere recites defendant's trade name nor does it reflect a dealer-to-dealer or wholesale transaction.

4. Plaintiff delivered the automobile, and the documents necessary for title transfer on resale to defendant on or about August 9, 1979. Pursuant to its Motor Vehicle Dealer's Agreement with the Bank, plaintiff assigned the Retail Instalment Contract at a discount to the Bank and received payment therefor. Thereafter, the Bank issued to defendant an instalment loan coupon payment book for 48 payments at $300.78 per month commencing September 25, 1979.

5. The Retail Instalment Contract contained a security agreement[1] and a provision restricting transfer of the automobile.[2] However, defendant's uncontradicted testimony at pre-trial deposition establishes that at the time he purchased the automobile from plaintiff he did so for resale and was not aware that the automobile was to be subject to a security interest or that it was to serve as collateral for a loan. (Transcript, DeRosa Deposition 4/24/81 at 44.) Indeed, the testimony of plaintiff's general manager who sold the automobile to defendant confirms this understanding and likewise indicates that no security agreement was intended (Transcript of Trial, 10/27/81 at 63–64). Accordingly, plaintiff made no attempt to perfect a security interest either under Article 9 of the New York Uniform Commercial Code (in dealer's inventory) or pursuant to the New York Uniform Vehicle Certificate of Title Act. Thus, although the Retail Instalment Contract contained a security agreement recitation and a provision restricting transfer, no security interest in the automobile was intended by the parties, nor was defendant to be restricted from reselling the automobile.

6. Apparently unable to resell the automobile immediately at retail, on August 23, 1979 defendant sold it at wholesale auction and received $9,145.00 as the net proceeds of the auction sale. Defendant did not inform plaintiff of his intent to sell the automobile at auction, nor did he account for the proceeds so received.

7. Thereafter, defendant made two payments to the Bank on the retail instalment loan, discontinued his automobile business and commenced the within Chapter 7 case.

8. After defendant's loan had been in default for approximately one year, on January 8, 1981, in accordance with its Motor Vehicle Dealer's Agreement, the Bank charged plaintiff's dealer reserve account for the balance due on defendant's loan and reassigned the Retail Instalment Contract to plaintiff. During plaintiff's post-petition attempts to enforce its alleged security agreement, defendant misrepresented the whereabouts of the automobile.

## DISCUSSION

### The Burden and Standard of Proof

Plaintiff has the burden of proving each element essential to its claim. Rule 407, Rules of Bankruptcy Procedure, 411 U.S. 1052; *See, e.g., In re Nance,* 556 F.2d 602, 605 (1st Cir. 1977). Code § 523(a) establishes the exclusive grounds whereby a debt may be excepted from discharge. Exceptions to discharge of a debt should be literally and strictly construed against the creditor and liberally in favor of the debtor. *Neal v. Clarke,* 95 U.S. 704, 24 L.Ed. 586 (1878); *Gleason v. Thaw,* 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915); *Davison-Paxton Co. v. Caldwell,* 115 F.2d 189 (5th Cir. 1940); *In re Danns,* 558 F.2d 114 (2d Cir. 1977); *In re Langer,* 12 B.R. 957, 7 B.C.D. 1323 (Bkrtcy.D.N.D.1981); *In re Davis,* 11 B.R. 156, 4 C.B.C.2d 377 (Bkrtcy.D.Vt.1980).

Where fraud is alleged, the court should indicate the standard of proof applied in arriving at its judgment. *McDonnell v. American Leduc Petroleums, Ltd.,* 456 F.2d 1170 (2d Cir. 1972). The traditional standard of proof (i.e., measure of persuasion) in civil cases generally is by a fair preponderance of the evidence. However, where fraud or dishonesty is at issue, the courts have typically required the higher and more exacting standard of clear and convincing evidence. *McCormick on Evidence,* § 340 (2d ed. 1972). Proceedings under Code § 523(a)(2) and § 523(a)(4), both exceptions to discharge sounding essentially in fraud, should be decided on a

---

1. Paragraph "5" of the Retail Instalment Contract recites—"SECURITY. To secure what I owe you under this contract: (a) I give you a security interest under the Uniform Commercial Code in the vehicle and in any other parts or equipment later installed in it . . ."

2. Paragraph "11" of the Retail Instalment Contract recites—"TREATMENT OF THE VEHICLE—INSURANCE. Until I pay you all I owe you under this contract: (a) I will not, without your prior consent, sell the vehicle or transfer the title to it . . ."

standard of clear and convincing evidence. This has generally been the rule.[3]

Although a claim under Code § 523(a)(6) alleging "willful and malicious injury" does not sound in fraud, the proof necessary to establish a "willful and malicious conversion" must essentially involve a showing of intentional fraud, dishonesty or deceit. Accordingly, the standard of proof appropriate to establish a claim of willful and malicious conversion under § 523(a)(6) should likewise be by clear and convincing evidence.[4]

*The § 523(a)(2)(A) Claim*

 The pertinent part of Code § 523(a)(2)(A) provides:

(a) A discharge under section 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, . . .

Plaintiff must show actual or positive fraud, rather than fraud implied in law. *In re Thomas*, 12 B.R. 765, 3 Bankr.L.Rep. (CCH) ¶ 68,228 (Bkrtcy.N.D.Ga.1981); *In re Davis*, 11 B.R. 156, 4 C.B.C.2d 377 (Bkrtcy. D.Vt.1980). Under this exception plaintiff must prove the following elements to establish a nondischargeable debt:

(1) That the debtor made the representations;

(2) That at the time he knew they were false;

(3) That he made them with the intention and purpose of deceiving the creditor;

(4) That the creditor relied on such representations; and

(5) That the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

*In re Nelson*, 561 F.2d 1342, 1346 (9th Cir. 1977); *Sweet v. Ritter Finance Company*, 263 F.Supp. 540, 543 (W.D.Va.1967); *In re*

---

**3.** *In re Brookshire*, 17 B.R. 308 (Bkrtcy.N.D.Ga. 1982) (§ 523(a)(2)(A));

*In re Fox*, 17 B.R. 300 ((Bkrtcy.M.D.Fla.1982) (§ 523(a)(2)(A));

*In re Farley*, 8 B.R. 145, 5 C.B.C.2d 549 (Bkrtcy. D.Or.1981) (§ 523(a)(2)(A));

*In re Vegh*, 14 B.R. 345, 3 Bankr.L.Rep. (CCH) ¶ 68,367 (Bkrtcy.S.D.Fla.1981) (§ 523(a)(2)(A));

*In re Trewyn*, 12 B.R. 543 (Bkrtcy.W.D.Wis. 1981) (§ 523(a)(2)(A));

*In re Liberati*, 11 B.R. 54 (Bkrtcy.E.D.Pa.1981) (§ 523(a)(2)(A));

*In re Lyon*, 8 B.R. 152, 3 C.B.C.2d 644, [1978–1981 Transfer Binder] Bankr.L.Rep. (CCH) ¶ 67,750 (Bkrtcy.D.Me.1981) (§ 523(a)(2)(A));

*In re Pommerer*, 10 B.R. 935, 4 C.B.C.2d 766 (Bkrtcy.D.Minn.1981) (§ 523(a)(2)(A));

*In re Nichols*, 6 B.R. 842 (Bkrtcy.D.Me.1980) (§ 523(a)(2)(A));

*In re Cappelli*, 6 B.R. 303, [1978–1981 Transfer Binder] Bankr.L.Rep. (CCH) ¶ 67,622 (Bkrtcy. D.R.I.1980) (§ 523(a)(2)(A));

*In re Callery*, 6 B.R. 527, [1978–1981 Transfer Binder] Bankr.L.Rep. (CCH) ¶ 67,958 (Bkrtcy.S. D.N.Y.1980) (§ 523(a)(2)(B));

*In re Magnusson*, 14 B.R. 662 (Bkrtcy.N.D.N.Y. 1981) (§ 523(a)(2)(B));

*In re Keppel*, 14 B.R. 479 (Bkrtcy.E.D.Pa.1981) (§ 523(a)(2)(B));

*In re Crook*, 13 B.R. 794, 4 C.B.C.2d 1451 (Bkrtcy.D.Me.1981) (§ 523(a)(2)(A), (4) and (6));

*In re Colasante*, 12 B.R. 635 (Bkrtcy.E.D.Pa. 1981) (Bankruptcy Act § 17a(2));

*In re Frahm*, 23 C.B.C. 332 (Bkrtcy.E.D.Wis. 1980) (Bankruptcy Act § 17a(8));

*In re Lawrence*, 1 B.R. 402, 5 B.C.D. 1185, [1978–1981 Transfer Binder] Bankr.L.Rep. (CCH) ¶ 67,270 (Bkrtcy.S.D.N.Y.1979) (Bankruptcy Act § 17a(2));

*In re Huff*, 1 B.R. 354, 1 C.B.C.2d 171, [1978–1981 Transfer Binder] Bankr.L.Rep. (CCH) ¶ 67,269 (Bkrtcy.D.Utah 1979) (Bankruptcy Act § 17a(2)).

*Contra, In re Baiata*, 12 B.R. 813, 817, 3 Bankr. L.Rep. (CCH) ¶ 68,264 (Bkrtcy.E.D.N.Y.1981) (fair preponderance standard applied to § 523(a)(2)(A), (4) and (6)); and

*In re Tanner*, 17 B.R. 201, 203 (Bkrtcy.W.D.Ky. 1982) (fair preponderance standard applied to a § 523(a)(6) conversion claim).

**4.** *In re Crook*, 13 B.R. 794, 4 C.B.C.2d 1451 (Bkrtcy.D.Me.1981) similarly involved a creditor seeking to except its debt from discharge under Code § 523(a)(2)(A), § 523(a)(4), and § 523(a)(6). In finding for the debtor-defendant, that court applied the clear and convincing standard to the § 523(a)(6) conversion claim as well. *See also In re Triangle Investment Associates B–1*, 17 B.R. 296, 300 (Bkrtcy.D.Mass. 1982) applying the clear and convincing standard to a willful and malicious conversion claim under § 17a(2) of the former Bankruptcy Act. *Contra, In re Tanner*, 17 B.R. 201, 203 (Bkrtcy.W.D.Ky.1982).

*Stewart,* 10 B.R. 214, 217, 4 C.B.C.2d 387, 390 (Bkrtcy.C.D.Cal.1981); *In re Thomas,* 12 B.R. 765, 768, 3 Bankr.L.Rep. (CCH) ¶ 68,-228 at 79,367 (Bkrtcy.N.D.Ga.1981); *In re Hospelhorn,* 18 B.R. 395, 5 C.B.C.2d 660, 662–63 (Bkrtcy.S.D.Ohio 1981). Further, the requisite fraudulent intent must be shown to have existed at the time the debtor obtained the money, property, services, or extension, renewal, or refinance of credit. *In re Cappelli,* 6 B.R. 303, [1978–1981 Transfer Binder] Bankr.L.Rep. (CCH) ¶ 67,-622 (Bkrtcy.D.R.I.1980).

■ Three of the five elements of positive fraud are established by the evidence. At the time of purchase defendant represented that he would pay for the automobile; plaintiff relied on this representation; plaintiff has been damaged as a result of this representation. However, plaintiff has not established that at the time of purchase defendant intended to deceive plaintiff or that defendant knew his representations were false. No evidence adduced establishes defendant's fraudulent intent at the time of purchase. "If the property . . . was obtained prior to the making of any false representation, subsequent misrepresentations will have no effect upon the discharge of the debt." 3 *Collier on Bankruptcy* ¶ 523.08 at 523–43 (15th ed. 1979). The evidence is insufficient to establish all of the elements of actual fraud necessary to except plaintiff's debt from discharge pursuant to § 523(a)(2)(A).

*The § 523(a)(4) Claim*

■ Plaintiff next alleges that defendant purchased the automobile as part of a larcenous scheme within the meaning of Code § 523(a)(4). "*Larceny* is the fraudulent and wrongful taking and carrying away the property of another with intent to convert such property to his (the taker's) use without the consent of the owner." 3 *Collier on Bankruptcy* ¶ 523.14 at 523–106 (15th ed. 1979); *see also* N.Y.Penal Law § 155.05 (McKinney 1975). An unlawful taking is the dominant characteristic of larceny. No proof here adduced suggests that defendant's possession of the automobile was obtained through wrongful and unlawful means. Defendant acquired the car lawfully by purchase from plaintiff. A larceny not having been established, plaintiff's § 523(a)(4) claim must also fall.

*The § 523(a)(6) Claim*

■ Plaintiff further asks that its debt be determined nondischargeable as a "willful and malicious injury by the debtor" within the meaning of Code § 523(a)(6). A willful and malicious conversion of property subject to a security interest may give rise to the requisite willful and malicious injury. *In re McCloud,* 7 B.R. 819, 3 C.B.C.2d 701, [1978–1981 Transfer Binder] Bankr.L.Rep. (CCH) ¶ 67,818 (Bkrtcy.M.D.Tenn.1980); *In re Auvenshine,* 9 B.R. 772, 7 B.C.D. 511, 3 C.B.C.2d 946 (Bkrtcy.W.D.Mich.1981); *In re Meyer,* 7 B.R. 932, 3 C.B.C.2d 534, [1978–1981 Transfer Binder] Bankr.L.Rep. (CCH) ¶ 67,777 (Bkrtcy.N.D.Ill.1981); *In re Giantvalley,* 14 B.R. 457 (Bkrtcy.D.Nev.1981); *In re Smith,* 11 B.R. 20 (Bkrtcy.N.D.Ohio 1981); *In re Obermeyer,* 12 B.R. 26 (Bkrtcy. N.D.Ohio 1981).

[T]he conversion of another's property without his knowledge or consent, done intentionally and without justification and excuse, to the other's injury, is a willful and malicious injury within the meaning of the exception. On the other hand; a technical conversion may very well lack any element of willfulness or maliciousness necessary to except the liability from discharge.

3 *Collier on Bankruptcy* ¶ 523.16 at 523–116–17 (15th ed. 1979).

A claim founded on a mere technical conversion without conscious intent to violate the rights of another, and under mistake or misapprehension, is dischargeable.

*Id.* at 523–123.

■ Every act of conversion does not necessarily give rise to a nondischargeable willful and malicious injury under § 523(a)(6). *See, e.g., In re Langer,* 12 B.R. 957, 7 B.C.D. 1323 (D.N.D.1981); *In re Hawkins,* 6 B.R. 97, 6 B.C.D. 1054 (Bkrtcy. W.D.Ky.1980); *In re Hodges,* 4 B.R. 513, 6

B.C.D. 531, 2 C.B.C.2d 566, [1978–1981 Transfer Binder] Bankr.L.Rep. (CCH) ¶ 67,-678 (Bkrtcy.W.D.Va.1980). "There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without wilfulness or malice." *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 332, 55 S.Ct. 151, 153, 79 L.Ed. 393, 397 (1934). Further, a conversion possessing the requisite willful ˙and malicious characteristics may nevertheless be discharged where a secured creditor fails to take reasonable steps to protect its security interest in the collateral. *Bennett v. W. T. Grant Co.*, 481 F.2d 664 (4th Cir. 1973).

██ The conversion must be both willful and malicious. The term "willful" means deliberate or intentional. The legislative history to § 523(a)(6) indicates that the looser standard of "reckless disregard," which had evolved through court interpretation of Bankruptcy Act § 17a(2), is not intended. S.Rep.No.95–989, 95th Cong., 2d Sess. 79 (1978); H.R.Rep.No.95–595, 95th Cong., 1st Sess. 365 (1977), U.S.Code Cong. & Admin.News, p. 5787.

There is some question, however, as to whether the term "malicious" as used in Code § 523(a)(6) retains the same meaning as was ascribed to it under former § 17a(2). *See Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904); *compare In re McCloud*, 7 B.R. 819, 3 C.B.C.2d 701, [1978–1981 Transfer Binder] Bankr.L.Rep. (CCH) ¶ 67,818 (Bkrtcy.M.D.Tenn.1980)˙ *with In re Lewis*, 17 B.R. 46 (Bkrtcy.W.D.Ark.1981). *See also In re McGiboney*, 8 B.R. 987 (Bkrtcy.N.D.Ala.1981). This court is persuaded by the analysis presented in *McCloud*, which adopted the looser *Tinker* common-law definition of implied or constructive malice, rather than the rigid standard of actual, subjective, conscious intent to harm as enunciated in *Lewis*.

*In re McGiboney, supra*, in continuing to apply the *Tinker* concept of "willful and malicious" under Code § 523(a)(6), stated the problem as follows:

Since willful *and* malicious are in the conjunctive both elements must be present. Willful means done with the will or intentionally, and not inadvertently or negligently. Malicious is not used in the sense of evil, personal ill will or hatred, but simply done consciously and knowingly wrongful, and without just cause or excuse.

Intent to harm or injure is not required. Intent to do the wrongful act is sufficient and that constitutes the willful part of the act. Unintentional, negligent or technical conversion may not be willful, but note how one can become enmeshed in a shaded area. Morals may or may not be involved in a wrong.

Judging human conduct is always difficult. When asked why they sold the creditor's furniture, the bankrupt replied, "Because I was hungry"; "My baby had no clothes"; or "I did not know it belonged to anybody." Ever since Mr. Tinker tinkered with Mrs. Colwell at the turn of the century, as the eminent Professor Countryman so artfully phrased it, bankruptcy courts have sought to judge the degree of culpability, and after˙seventy-five years have not come up with a better definition than *Collier's* quotation [3 *Collier on Bankruptcy*, ¶ 523.16, *supra*]. No wonder Congress has not attempted to define willful and malicious anymore than it has defined "alimony" or "in the nature of alimony", "set-off", "adequate assurance", "adequate protection" or "other professional persons", either accepting established case law or leaving the definition to future decisions.

It may be that future Bankruptcy Judges may establish a new and novel norm for "willful and malicious" and a different list of dischargeable conduct. If "intent to harm" is to play a greater part, then conflict will be greatly narrowed and a departure from the old concept will be attained. To the writer, it is more a matter of guilty knowledge or wrongdoing.

*Id.* at 989.

██ Nevertheless, the proof here does not support plaintiff's claim that defendant intentionally converted its security interest in the automobile. Indeed, the proof estab-

lishes that neither party to the purchase transaction intended to create a security interest in the automobile, notwithstanding the security agreement provision contained in the Retail Instalment Contract. Absent a clear and convincing showing that defendant acted with guilty knowledge or conscious intent to violate the rights of plaintiff, the § 523(a)(6) claim must also be dismissed.

However, assuming *arguendo* that the proof had established that a security interest in the automobile was intended, there is no evidence to support a finding that the auction sale of the automobile by defendant was without just cause or excuse, particularly since resale was expressly contemplated at time of purchase. Further, even if plaintiff had established that a security interest was intended and that defendant sold the collateral with guilty knowledge or without just cause or excuse, the record here might support a finding that in failing to perfect its security interest plaintiff neglected to take reasonable steps to protect its lien, which, under equitable principles, could nevertheless require discharge of the debt. *See Bennett v. W. T. Grant Co., supra,* at 666.

### CONCLUSIONS OF LAW

1. Plaintiff has not met its burden of proving all of the facts necessary to except its debt from discharge under Code § 523(a)(2)(A), § 523(a)(4) or § 523(a)(6).

2. The debt owing to plaintiff by the debtor-defendant is dischargeable. The complaint is dismissed.

SO ORDERED.