In re Ronald C. HICKS, Debtor.

**BANKERS TRUST COMPANY, a New York Banking Organization, Plaintiff,**

v.

**Ronald C. HICKS, Defendant.**

**Bankruptcy No. 86–3060–8B7.**

**Adv. No. 88–142–8P7.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

May 15, 1989.

Eric E. Ludin, for plaintiff.

R. John Cole, II, Sarasota, Fla., for defendant.

FINDINGS OF FACT,
CONCLUSIONS OF LAW

MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 case, and the matter under consideration is the dischargeability vel non of a debt allegedly owed by Ronald C. Hicks, Sr. (Debtor), to Bankers Trust Company (Plaintiff), the Plaintiff who instituted this adversary proceeding. The claim of nondischargeability is asserted in what ostensibly appears to be an amended two-count Complaint, but which is, in fact, a one-count Complaint based upon § 523(a)(6) of the Bankruptcy Code. The claim of nondischargeability is based on the allegation that the Debtor converted monies allegedly the property of the Plaintiff. The prayer for relief in Count II seeks a determination by this Court of the amount of the judgment to be entered, if one is entered in favor of the Plaintiff. The facts as developed at the final evidentiary hearing and which are relevant to the remaining issue are as follows:

At the time relevant to the matter under consideration, the Debtor applied for and obtained a loan in the amount of $20,000.00 from Barnett Bank of Southwest Florida (Barnett). In connection with this transaction, the Debtor executed a promissory note in favor of Barnett which was secured by 100 shares of stock which the Debtor owned in General Foods Corporation (Plaintiff's Exh. No. 8). In October 1985, as part of a merger agreement between General Foods Corporation and Phillip Morris Company, a tender offer was made by the Phillip Morris Company which contemplated the purchasing of the shares in General Foods Corporation for $120.00 per share. Barnett, who had possession of the shares in General Food Corporation, forwarded the shares to the Plaintiff who, as the financial conduit for the merger, ex-

changed the shares of stock, for $120.00 per share.

It appears that on October 29, 1985, Plaintiff issued a check in the amount of $12,000.00 for the value of the stock. The check was made payable to the Debtor (Plaintiff's Exh. No. 1). It is undisputed that the Debtor deposited this check in his checking account and subsequently wrote checks from this account to pay for sundry purchases and various obligations. On January 24, 1986, Barnett contacted Plaintiff and informed it that they had not received the $12,000.00 and demanded that the Plaintiff reissue another check for the same amount.

On February 20, 1986, the Plaintiff issued a check in the amount of $12,000.00 payable to Barnett and that payment was credited by Barnett to the Debtor's commercial loan account (Plaintiff's Exh. No. 2).

It is the contention of the Plaintiff that the Debtor knew that the check payable to him was issued in error, and that he had no right to retain these funds. The Plaintiff urges that the Debtor's conduct constituted conversion and, therefore, the alleged obligation should be declared nondischargeable pursuant to § 523(a)(6) of the Bankruptcy Code.

As intimated above, the Debtor admits that he did, in fact, apply the funds received from the Plaintiff for his own personal use, and that this use did not include the payment on the outstanding debt he owed to Barnett on account of the previously mentioned loan. The Debtor also denies that at the time he received the check from the Plaintiff, he did not know he remained indebted to Barnett, nor was he aware that the check he received was made payable to him in error. In addition, the Debtor alleges that the Plaintiff was a third-party volunteer in making the second check payable to Barnett and, therefore, the Debtor is not liable for any monies the Plaintiff paid to Barnett.

§ 523(a)(6) of the Bankruptcy Code excepts from discharge any debt ...

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

The drafters of this section of the Code contemplated conversion as an act which would except a debt arising from such conversion from a debtor's general discharge. Conversion is generally defined as a wrongfully assumed "dominion over personal property by one person to the exclusion of possession by the owner and in repudiation of the owner's rights." *In re Pommerer*, 10 B.R. 935 (Bkrtcy.D.Minn. 1981) A debt is nondischargeable under § 523(a)(6) only if the conversion was both "willful", "malicious" and not just because the conversion was intentional or merely technical. *In re Kimzey*, 761 F.2d 421 (7th Cir.1985). A willful and malicious injury does not follow as, of course, from every act of conversion without reference to the circumstances. There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without willfulness or malice. In these cases, what is done is a tort, but not necessarily a willful and malicious one. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934). To prevail under this section, the Plaintiff must show by clear and convincing evidence that the conversion was committed willfully and maliciously. *In re DeRosa*, 20 B.R. 307 (Bkrtcy.S.D. N.Y.1982); *In re Dean*, 9 B.R. 321 (Bkrtcy. M.D.Fla.1981).

Section 17(a)(2) of the Bankruptcy Act of 1898 excepted from discharge debts "for willful and malicious injuries to persons or property of another." The leading case interpreting the standard to be applied in that exception was *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904) under § 523(a)(6) and that specific malice was not required. *United Bank of Southgate v. Nelson*, 35 B.R. 766 (Bkrtcy.N.D.Ill. W.D.1983)

Under § 523(a)(6), successor to Section 17(a)(2) of the Bankruptcy Code, the accompanying legislative history indicates that *Tinker* to some extent has been overruled.

Paragraph (5) provides that debts for willful and malicious injury by the debtor

to another person or to the property of another person. Under this paragraph, "willful" means deliberate or intentional. To the extent that *Tinker v. Colwell*, 193 U.S. 473 [24 S.Ct. 505, 48 L.Ed. 754] (1902) [1904], held that a looser standard is intended, and to the extent that other cases have relied on *Tinker* to apply a "reckless disregard" standard, they are *overruled.* [emphasis added]

H.R.Rep. No. 595, 95th Cong., 1st Sess. 365 (1977), reprinted in 1978 U.S.Code Cong. & Admn.News 5787, 5963, 6320–21; S.Rep. No. 989, 95th Cong., 2d Sess. 79 (1978), reprinted in 1978 U.S.Code Cong. & Adm. News 5787, 5865.

To what extent Congress intended to overrule *Tinker* is the subject of disagreement under current case law. One line of cases read the legislative history to overrule the two holdings of *Tinker*. *See Matter of Lewis*, 17 B.R. 46 (Bkrtcy.W.D.Ark. 1981); *In re Petsch*, 82 B.R. 605 (Bkrtcy.M.D.Fla.1988); *In re Hodges*, 4 B.R. 513 (Bkrtcy.W.D.Va.1980). A second line of cases has interpreted the legislative history so as to overrule *Tinker* only to the extent that "willful" was considered to include reckless disregard of duty. These courts interpret "willful" to mean intentional or deliberate and "malicious" to be implied as constructive malice similar to what was required under *Tinker*. *In re Fussell*, 15 B.R. 1016 (W.D.Va.1981); *In re Chambers*, 23 B.R. 206 (Bkrtcy.W.D.Wis.1982)

█ This Court is convinced that the better line of cases are those which conclude that the plaintiff has the burden of proving by clear and convincing evidence the defendant's conduct was willful, malicious, deliberate and intentional. To make out a viable claim of conversion, the Plaintiff would have to show that the Defendant converted its property and that such conversion was with willful and malicious intent, i.e., in conscious disregard to another's rights.

█ The alleged conversion under consideration occurred when the check from the Plaintiff was deposited in the Debtor's account rather than either endorsed to Barnett to satisfy the Debtor's outstanding debt or returned to the maker, the Plaintiff. The evidence presented by the Debtor to vitiate the claim against him, was 1) that he did not know the payment was made to him in error as he was the legal owner of the shares of stocks notwithstanding that they had been pledged as security to Barnett, and 2) that he believed he was no longer indebted to Barnett.

This Court is satisfied that the evidence presented by the Plaintiff is sufficient to show that the Debtor willfully and maliciously converted the monies received on account of the stock transfer. The check which the Debtor received from Barnett was made payable to the Debtor and did not name Barnett as co-payee. However, it is equally clear that the Debtor was fully aware that the stocks had been pledged to Barnett as security for the loan. It is true that the records warrant the finding that the Debtor knew that his obligation to Barnett was still outstanding and the fact that Barnett was ultimately paid with a replacement check by the Plaintiff is of no consequence. The fact remains that the $12,000 which the Debtor received and used was appropriated by him with a total disregard of Barnett's right. While the money received from the Plaintiff represented the proceeds of Barnett's collateral, this Court is satisfied that it was the Plaintiff whose funds were wrongfully appropriated by the Debtor.

Based on the foregoing, this Court is satisfied that the Plaintiff has met its burden of proving the Debtor willfully and maliciously injured the Plaintiff's property, and, therefore, the debt should be declared nondischargeable pursuant to § 523(a)(6) of the Bankruptcy Code.

A separate Final Judgment will be entered in accordance with the foregoing.