**In the Matter of James T. HOSKING and Nancy L. Hosking, Debtors.**

**Edward MICK and Jean Mick, Plaintiffs,**

v.

**James HOSKING, Defendant.**

**Adv. No. 81–0052.**

United States Bankruptcy Court, W. D. Wisconsin.

April 30, 1982.

Paul Karas, Madison, Wis., for plaintiffs.

Charles G. Center, Madison, Wis., for defendant.

## OPINION AND ORDER

ROBERT D. MARTIN, Bankruptcy Judge.

On May 21, 1980, plaintiffs Jean and Edward Mick entered into a contract with defendant James Hosking. The contract provided that Hosking would perform various remodeling tasks on the Micks' house. These tasks included:

1. tearing off the old roof and reshingling it;
2. replacing the concrete area around the driveway;
3. building a rear porch stoop;
4. remodeling the bathroom;
5. replacing the front prime door;
6. bringing the wiring up to code; and
7. making a family room out of the unfinished basement.

The contract price was $10,800.00, of which $6,000.00 was to be paid immediately and the balance "as needed to complete." The contract contained a $1,500.00 electrical allowance. Mrs. Mick wrote a check for $6,000.00, which Hosking accepted.

Both plaintiffs testified that they understood "balance as needed to complete" to mean that Hosking would return to them for more money when $6,000.00 had been expended on their job and he needed additional cash to continue his work on their house. On July 7, Hosking asked the Micks for $2,000.00 more, which they gave him. The Micks testified that Hosking told them he needed more money for labor and materials. When questioned about the use of the original $6,000.00, he said he had used it to complete other jobs for which he expected to be paid.

Work on the Micks' house had begun June 18, 1980. By July 7, when Hosking returned for more money, the roof and stairway had been completed, and the existing basement partitions had been removed. It is very difficult to determine precisely how much of the initial $6,000.00 payment had been spent by this date on labor and materials for the Mick remodeling, and how much had gone to the other jobs. The time records received in evidence show that two of Hosking's employees, Steven Polodna and Douglas Sanford worked on the Mick job. Polodna worked 37.75 hours and Sanford worked 58.5 hours between June 18 and July 7, 1980. Based on their hourly wages of $9.00 and $8.50, respectively, $837.00 had been spent on labor by July 7, 1980. Hosking had done some work on the Mick job himself, but there is no evidence as to the amount of time spent, the appropriate wage or the dates of the work.

The amount spent on materials is even more difficult to determine. Hosking produced a sheaf of receipts which he represented to be "substantially" for materials used on the Mick house. He later admitted that the receipts prior to June 18 should not be included. The receipts total $363.55 in materials purchased from June 18, 1980, to July 7, 1981. Only Hosking's assertion identifies these purchased materials as used on the Mick job. In addition, materials from Hosking's inventory were used on the Mick job. Hosking estimated his inventory to have been $822.78 before the Mick job was begun, but was unable to state either when or how much of the inventory had been used on the Mick job. Even assuming that the entire $822.78 was used on the Mick job before July 7, the total expended

on this job at this point for materials and labor was $2037.55.

By July 7 Hosking had spent, at most, $2,037.55 of the Micks' $6,000.00 for the purpose for which he represented it would be used. By Hosking's own admission, the remaining $3,962.45 was spent to complete other jobs. The next contract payment was made on July 30, 1980, when Hosking requested and received from the Micks $1,500.00 to buy materials for the bathroom. These bathroom materials were never purchased, although the money received was used for expenses under the contract.

The last contract payment was on September 3, 1980. Hosking received a check for $550.00 from Mrs. Mick, after telling her that the money was to be used for the price differential between the carpeting the Micks chose and the carpeting allowed for in the contract proposal. In fact, the total bill for carpeting and installation supplies purchased at that time by defendant was $408.19. Mrs. Mick testified that Hosking also told her that her husband had approved the check, although her husband told her later that he had not done so. Hosking testified that he did receive Mr. Mick's approval. Mr. Mick did not testify on this issue and Mrs. Mick's version is inadmissible hearsay. The only admissible evidence of Mr. Mick's authorization comes from Hosking.

The contract price of $10,800.00 had been increased by a change notice dated July 7, 1980. This notice raised the contract price by $831.00 to $11,631.00. The total received from the Micks was $10,050.00. Thus, by September 3, 1980, the Micks had paid all but $1,581.00 of the contract price directly to Hosking. On September 3, after being threatened with a lien against their house, the Micks paid $1,300.00 to Pfeiffer Electric Supply Co. The Micks understood that electric bills up to $1,500.00 were to be paid by Hosking out of money received under the contract. They testified that Hosking instructed them to pay the electric bill because an amount greater than the electric bill was still due on the contract. Although it may reasonably be disputed whether the unpaid contract price was yet due, the statement made by Hosking was not of a character which could be a basis for a misrepresentation.

The Micks wrote one additional check connected with the remodeling job. This check was to a carpet layer for $125.00. Hosking was unable to lay the carpet correctly and told the Micks to have an expert do it. Although this arrangement was at variance with the contract, it, too, involved no misrepresentation.

Since July Hosking had been experiencing financial difficulties, which he did not disclose to the Micks. Sometime in September, Mr. Mick told Hosking that if he could not come back and finish the job, he should not come back at all. Hosking was financially unable to continue, and the job was abandoned.

Although not subject to concise or easily summarized proofs, the credible evidence shows that the Micks paid $10,475.00 for approximately $6,500.00 worth of labor and material. $3,975.00 paid under the contract was diverted by Hosking to pay debts antecedent to the contract.

On December 18, 1980, Hosking, with his wife Nancy, filed a voluntary petition in bankruptcy under chapter 7. The Micks were listed as unsecured creditors without priority for $3,000.00. On March 13, 1981, the Micks commenced this adversary proceeding, objecting to Hosking's discharge under 11 U.S.C. § 523(a)(2)(A).

11 U.S.C. § 523(a)(2)(A) provides that a discharge does not discharge an individual debtor from any debt

for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; . . . .

This section is derived from § 17(a)(2) of the Bankruptcy Act of 1898 (11 U.S.C. § 35 (1976)) which reads as follows:

a. A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . . . (2) are liabilities

for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive, or for willful and malicious conversion of the property of another.

These sections are substantially identical. *Brown v. Felson*, 442 U.S. 127, 129, 99 S.Ct. 2205, 2208, 60 L.Ed.2d 767 (1979). The case law which arose under § 17a(2) has been used by this court, among others, for guidance in construing 11 U.S.C. § 523(a)(2)(A). *See, e.g., In Re Schnore*, 13 B.R. 249 (Bkrtcy.W.D.Wis.1981); *In Re Miller*, 5 B.R. 424, 2 C.B.C.2d 849 (Bkrtcy.W.D.La.1980); and *In Re Ashley*, 5 B.R. 262, 6 B.C.D. 655, 2 C.B.C.2d 949 (Bkrtcy.E.D.Tenn.1980). In particular, the Seventh Circuit analysis in *Carini v. Matera*, 592 F.2d 378 (7th Cir. 1979) of the elements necessary to deny discharge under § 17(a) has been used by this court in analyzing cases under 11 U.S.C. § 523(a). *See In Re Schnore, infra.*

The Seventh Circuit in *Carini* found that a denial of discharge under § 17(a) requires that:

1. The bankrupt must have obtained the money or property through representations known to be false or made with a reckless disregard for the truth.

2. The bankrupt must have intended to deceive.

3. The creditor have must reasonably relied on the debtor's misrepresentations. 592 F.2d at 380–81.

■ The burden of establishing knowing or reckless misrepresentation, the intent to deceive and the creditor's reasonable reliance is on the party objecting to discharge. *Carini v. Matera, infra, In Re Schnore, infra*, and *In Re Jordan*, 3 B.C.D. 1292 (Bankr.S.D.Ohio 1977). Upon that legal basis the transactions involved in each transfer of money between the Micks and Hosking must be individually analyzed.

■ *The initial $6,000.00 payment.* The Micks have established that Hosking repre-

sented that the initial payment would be used for labor and materials on their remodeling job. This was the understanding of all parties at the time the contract was signed. Indeed, one would expect this to be the reasonable contemplation of people entering into such a contract. By virtue of Hosking's own admissions, the Micks have sustained their burden of showing that approximately $3,955.42 of this payment was diverted to other purposes, and that this diversion occurred shortly after the contract was signed. Thus, the Micks have established that Hosking obtained their money through false representations.

The two other elements which must be proven under 11 U.S.C. § 523(a)(2)(A), intent to deceive and reasonable reliance, are less susceptible of direct proof. Both elements require probing the state of mind of the parties at the time of the contract. In determining whether the debtor intended to deceive the creditors at the time the false representation was made, courts have looked to the totality of the circumstances. *See In Re Schnore, infra* and *In Re Black*, 373 F.Supp. 105 (E.D.Wis.1974). Indeed, if such circumstantial evidence were not considered, a creditor could only prevail under 11 U.S.C. § 523(a)(2)(A) on those rare (or non-existent) occasions when the debtor admits his intention to deceive. In the instant case, the totality of circumstances indicate that Hosking intended to deceive the Micks. Hosking knew that he needed money to finish other jobs at the time he received the Micks' money. There was no evidence of any change in circumstances which could support an inference that Hosking had originally intended to use the money as represented, but later changed his mind. The evidence indicates that Hosking received the Micks' money intending to use it for purposes other than that to which the parties had agreed.

Thus, this case is unlike *In Re Trewyn*, 12 B.R. 543 (Bkrtcy.W.D.Wis.1981), which also involved a contractor's failure to complete construction work. In *Trewyn*, this court held that "the greater weight of the evidence indicates that Trewyn intended, at least at the time he received the only pay-

ment made by Long, to undertake the work for which payment was made." *Trewyn* at 546. This court believed that the debtor did not have a preconceived plan at the time of payment to use the money for another purpose. In the present case, the evidence supports a finding that Hosking did have such a preconceived plan. Therefore, the Micks have sustained their burden of showing that Hosking intended to deceive them.

The final element for nondischargeability is that the creditors reasonably relied on the debtor's misrepresentations. There are actually two parts to this element. First, the creditors must show reliance—that they would not have advanced the debtor credit or money, but for the false statement. Second, the creditors must show that this reliance was reasonable.

The initial $6,000.00 payment was given to Hosking with the understanding that it would be used on the remodeling job for which they had contracted with him. Although reliance is not susceptible of direct proof, in the instant case it is hardly credible to suppose that the Micks would have turned over to the defendant $6,000.00, knowing that he did not intend to use it to provide labor and materials for their home remodeling. Furthermore, the Micks' reliance was reasonable. Hosking was their friend; this was the main reason for choosing him to do their remodeling. The Micks were not commercially sophisticated consumers. Although they could possibly have done more to protect themselves and insure that the money they advanced would be used for the purpose they intended, it is not unreasonable that they did not do so.

The Micks have sustained their burden of proof in objecting to discharge. Hosking received $6,000.00 from the Micks, of which the $3,962.45 paid on antecedent debts was obtained by false representations, intended to deceive and reasonably relied upon. Therefore, $3,962.45 owed to the Micks is nondischargeable.

■ *The July 7 payment of $2,000.00.* Hosking returned to the Micks on July 7, 1980 and requested an additional $2,000.00. There appears to have been no misrepresentation at this transaction. Hosking admit-

ted that he had used much of their original payment for other jobs. He represented that he would use the July 7 payment for labor and materials and, based on the records in evidence, did so. Any obligation to the Micks arising from the $2,000.00 payment is, therefore, dischargeable.

■ *The July 30 payment of $1,500.00.* On July 30, Hosking received an additional $1,500.00 from the Micks. Hosking told the Micks that this money would be used for labor and materials, in particular for materials for the bathroom. The materials for the bathroom were never purchased, but Hosking did use this $1,500.00 to provide labor and materials for the Micks. The Micks have not established that Hosking intended to deceive them when he promised that the money would be used on the bathroom. Also the Micks have not proved that they would not have given Hosking the money had he not told them that it would be used for the bathroom. Thus, the circumstances surrounding the $1,500.00 do not fit within the test for nondischargeability under 11 U.S.C. § 523(a)(2)(A).

■ *The September 3 payment of $550.00.* The September 3 payment shares many of the features of the July 30 payment. Hosking represented that he would use the money for a certain purpose (carpeting), when the money was in fact used in another way in the remodeling. In the case of the money received for carpeting, however, there is evidence that Hosking knew at the time that the entire $550.00 would not be used to make up the difference between the carpet the Micks had chosen and the carpet Hosking had intended to use, as the entire price of the carpeting was only $408.19. However, even if one accepts this evidence as proving that defendant made a false statement intending to deceive, there remains the question of reliance. The Micks have not established that they would not have given Hosking the payment if they had known that he intended to use it on other aspects of their remodeling. Thus the payment of $550.00 does not meet the standard for nondischargeability under 11 U.S.C. § 523(a)(2)(A).

*The $1,300.00 payment to the electrician and the $125.00 payment to the carpet layer.* These two payments, under the terms of the original contract, should have been made by Hosking out of money paid to him by the Micks. While this may be a breach of contract, it does not rise to the level of fraudulent misrepresentation envisioned by the Bankruptcy Code. Hosking made no misrepresentation at the time these payments were made, and they are, therefore, dischargeable.

Upon the foregoing which constitute my findings of fact and conclusions of law it is hereby

ORDERED that the debt of defendant, James Hosking, to plaintiffs, Jean and Edward Mick, to the amount of $3,955.42 is not dischargeable. Judgment may be entered accordingly.