**In the Matter of Wendell Wayne CHAM-BERS, a/k/a Wayne Chambers, Wendell W. Chambers, Debtor.**

**BARNEVELD STATE BANK, Plaintiff,**

v.

**Wendell Wayne CHAMBERS and Ronald Paskin, Trustee, Defendants.**

**Adv. No. 81-0241.**

United States Bankruptcy Court, W. D. Wisconsin.

Sept. 22, 1982.

Paul F. Angel, Angel Law Offices, Dodgeville, Wis., for plaintiff.

William D. Dyke, Mineral Point, Wis., for defendants.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Bankruptcy Judge.

Wendell Wayne Chambers filed for bankruptcy under chapter 7 on August 12, 1981. Chambers had been in the used car business as Ridgeway Auto Sales. In the course of that business he borrowed $40,000 from Barneveld State Bank under the terms of a promissory note dated April 28, 1971. The note was secured by two real estate mortgages. On March 14, 1977, Chambers executed an inventory security agreement as further security for the promissory note. In order to effectuate the inventory security agreement, Chambers executed a new floor plan note every month. Newly purchased vehicles were added at that time and vehicles which had been sold were removed. The last of these floor plan notes was executed May 10, 1982. At that time, Chambers did not receive any additional cash.

■ The Bank began this adversary proceeding with an objection to discharge based on two grounds. First, it contended that the inventory security agreement created a fiduciary relationship between the two parties. Chambers, it is argued, committed fraud in a fiduciary capacity when he sold the vehicles on the floor plan note without accounting for their proceeds to the Bank. The Bank argues that the following clause in the inventory security agreement created a fiduciary relationship.[1]

Unless waived in writing by Bank, all proceeds of Collateral received by Debtor shall be held by Debtor upon an express trust for Bank, shall not be commingled with any other funds or property of Debtor, and shall be turned over to Bank not later than the business day following the day of their receipt.

In In re Miles, 5 B.R. 458, 6 B.C.D. 805, 2 C.B.C.2d 892 (Bkrtcy.E.D.Va.1980), however, the court found a similar clause insufficient to create a fiduciary relationship within the meaning of the Bankruptcy Code. In Miles, the debtors owned an appliance store. The inventory security agreement contained this clause, "[u]ntil such amounts [proceeds from the sales] have been delivered, debtor shall hold the entire proceeds, in the same form as received IN TRUST for BWAC, separate and apart from debtor's fund and goods." 5 B.R. at 459, 6 B.C.D. at 806, 2 C.B.C.2d at 893. The court relied on the Supreme Court tradition of narrow construction of the exception to discharge for fraud while acting in a fiduciary capacity:

The term 'fiduciary' has been consistently construed as limited to express trusts and not to trusts imposed because of an act of wrongdoing out of which the debt arose, or to trusts implied by law from contracts. The Courts have attempted to avoid making the exception so broad that it reaches such ordinary commercial relationships as creditor-debtor and principal-agent.

It is abundantly clear that the relationship between the parties in the present case was that of creditor and debtor and nothing else.... Verbal legerdemain does not impose a fiduciary duty on the debtor—'the resulting obligation is not turned into one arising from a trust because the parties to one of the documents have chosen to speak of it as a trust.' Davis v. Aetna Acceptance Co., supra, 293 U.S. [328] at 334, 55 S.Ct. [151] at 154 [79 L.Ed. 393]. 5 B.R. at 460, 6 B.C.D. at 806, 2 C.B.C.2d at 894 (citations omitted). See also, In Re Drake, 5 B.R. 149, 6 B.C.D. 662, (Bkrtcy.D.Idaho 1980), In Re Graham, 7 B.R. 5, 6 B.C.D. 539, 2 C.B.C.2d 695, BANKR.L.REP. (CCH) ¶ 67,591 (Bkrtcy.D.Nev.1980).

In the present case, as in Miles, Chambers and the bank were in a debtor-creditor relationship, not the type of relationship considered fiduciary under the Bankruptcy Code.

The Bank's next contention is that Chambers did not own one of the vehicles which appeared in the May 14th floor plan note, and that by representing that he owned it, Chambers obtained a renewal or refinance of credit by means of a false representation

---

1. The Bank also requested relief from stay. This dispute was resolved by stipulation.

or statement. The Bank produced titles to the various cars and established that neither Chambers nor Ridgeway Auto Sales appeared in the chain of title to a 1973 Buick Electra, which is listed on the May floor plan note. Chambers admitted that he had never owned this vehicle and alleged not to know how it came to be on the note.

Under 11 U.S.C. § 523(a)(2)(A) a debt obtained by false representations is not dischargeable. This section provides:
(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—
(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

In order for a creditor to prevail under 11 U.S.C. § 523(a)(2)(A), he must show that;

1. The debtor obtained money, property or a renewal or refinance of credit through representations known to be false or made with a reckless disregard for the truth.

2. The debtor intended to deceive.

3. The creditor reasonably relied on the debtor's misrepresentation. *Carini v. Matera,* 592 F.2d 378 (7th Cir. 1979), *In Re Hosking,* 19 B.R. 891 (Bkrtcy.W.D.Wis. 1982), *In Re Schnore,* 13 B.R. 249 (Bkrtcy. W.D.Wis.1981).

The burden of establishing knowing or reckless misrepresentation, the intent to deceive and reasonable reliance is on the party objecting to discharge. *In Re Hosking, supra, Carini v. Matera, supra, In Re Schnore, supra.*

The initial question is whether the execution of the May floor plan note is a renewal or refinance of credit. Chambers did not receive additional cash or credit when these monthly notes were executed. The collateral was simply updated to accurately reflect what was on the car lot at the

time. The original promissory note and the inventory security agreement were not extended or changed in any way. The Bank did not forebear from foreclosure or in any way modify its rights when the note was executed. Thus, the floor plan note is not a refinance or renewal of credit, but simply a routine substitution of collateral.

Even if the transaction between the Bank and Chambers were a renewal or refinance of credit, under pre-Code law [2] only the "fresh cash" advanced the debtor at the time the false statement was made is nondischargeable, *In Re McGlynn,* 2 B.C.D. 1162 (D.Minn.1976), *In Re Danns,* 3 B.C.D. 549 (2nd Cir. 1977), *In Re Lawrence,* 4 B.C.D. 959 (Bankr.D.R.I.1978), unless the creditor had foregone some other remedy such as garnishment or foreclosure, in reliance on the bankrupt's misrepresentation, *In Re Burton,* 4 B.C.D. 569 (Bankr.S.D.N.Y. 1978).

The reasoning behind this doctrine is that a creditor is only damaged by a false statement to the extent that he advances money or foregoes a remedy in reliance on the false statement. As the Second Circuit noted in *Danns:*

We think the proper construction of § 17a(2) is unmistakable. The language of § 17a(2) bars discharge only of 'liabilities for obtaining' extensions of renewals of credit 'in reliance upon a materially false statement'; this strongly implies that the creditor should be entitled to bar discharge only of that portion of his loan as was obtained fraudulently.' 3 B.C.D. at 551.

This reasoning seems equally applicable under present law. The Code speaks of "debts for obtaining … an extension, renewal or refinance of credit by false pretenses or false representation." In the present case no debt was obtained by such means. The debt owed to the Bank existed at the time the alleged misrepresentation took place. Finally, although the 11 U.S.C. § 523(a)(2)(A) does not explicitly mention

**2.** § 17(a)(2) of the 1898 Bankruptcy Act provided that discharge be denied if the debtor obtained an extension or renewal of credit by means of a materially false financial statement.

reliance on the statement by the creditor as an element, this court, among others has held such reliance to be necessary. *See In Re Hosking,* 19 B.R. 891 (Bkrtcy.W.D.Wis. 1982). Thus, the Bank's claim under 11 U.S.C. § 523(a)(2)(A) is without merit.

■ A final possible ground for denying discharge is conversion under 11 U.S.C. § 523(a)(6). This issue was not raised by the Bank. Chambers admitted that he made personal use of a 1974 Buick Electra which was listed as security for the Bank from May of 1978, when he went out of business until September of 1978, when he turned it over to another car dealer for sale. Chambers was not authorized by the Bank to use the vehicles in which it had a security interest in this manner.

11 U.S.C. § 523(a)(6) excepts from discharge liabilities for willful and malicious injuries to another entity, or the property of another entity. Injury under this section includes common law conversion. *In Re Donny,* 19 B.R. 354 (Bkrtcy.W.D.Wis.1982).

■ In order for an injury to be excepted from discharge under 11 U.S.C. § 523(a)(6), it must be both willful and malicious. Willful has been interpreted to mean deliberate or intentional. *In Re Giantvalley,* 14 B.R. 457, 458 (Bkrtcy.D.Nev. 1981), *In Re Meyer,* 7 B.R. 932, 933, 3 C.B. C.2d 534, 535 [1978–1981 Transfer Binder] BANKR.L.REP. (CCH) ¶ 67,777 at 78,477 (Bkrtcy.N.D.Ill.1981). In the present case, Chamber's unauthorized use of the Buick seems clearly to have been deliberate or intentional. This court has adopted a definition of malice which does not require personal hatred or ill will. Instead, what is required is that the debtor know his act will harm another and proceed in the face of that knowledge. *Donny,* at 359, *In Re Ries,* 22 B.R. 343 (Bkrtcy.W.D.Wis.1982). Chambers, as an experienced car dealer, certainly knew that cars decline in value over time, and that the use of a vehicle hastens this decline. Both by simply delaying the car's sale and by making use of the car, Chambers reduced the car's value and thereby reduced the value of the Bank's security interest. That reduction in value was a malicious injury to the property of another.

■ The court has not been presented with sufficient evidence to determine how much the value of the car declined during the four-month period of unauthorized use. The loss of value of a four-year-old car driven for 5 months would not be expected to be great, but absent evidence no judgment may be properly entered.

Upon the foregoing, which constitute my findings of fact and conclusions of law in this proceeding, the complaint of Barneveld State Bank shall be dismissed. Judgment may be entered accordingly.