**In the Matter of Clarence Roy ADAMS and Joan Marie Adams, Debtors.**

**John SPURGEON and Gordon L. Shafer, Plaintiffs,**

**v.**

**Clarence Roy ADAMS, Defendants.**

Bankruptcy No. 81–03515–SJ.
Adv. No. 82–0069–SJ.

United States Bankruptcy Court,
W.D. Missouri,
St. Joseph Division.

Sept. 28, 1982.

Martha Sperry Hickman, Independence, Mo., for John Spurgeon.

Hugh A. Miner, St. Joseph, Mo., for defendants.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL DECREE AND JUDGMENT DECLARING DEFENDANT'S INDEBTEDNESS TO PLAINTIFF IN THE SUM OF $40,330.00 TO BE NONDISCHARGEABLE IN BANKRUPTCY AND JUDGMENT THAT PLAINTIFF HAVE AND RECOVER THE SAME SUM FROM THE DEFENDANT

DENNIS J. STEWART, Bankruptcy Judge.

This is an action in which the plaintiffs seek judgment for the value of certain chattels, i.e., various types of pigs and their offspring, which were given over to the debtor's custody under an oral contract providing for their use and care and not returned to the plaintiffs, but rather were sold by him on his own account. The action was brought to trial on July 1, 1982, where-upon the plaintiff John Spurgeon appeared personally and by counsel Martha Sperry Hickman, and the defendant appeared personally and by counsel, Hugh A. Miner.

The evidence which was then adduced demonstrated without any contradiction or equivocation that, between April 20, 1981, and July 14, 1981, the plaintiffs delivered 194 breeding gilts and sows and 17 pigs to the debtor; that they were delivered under an agreement to the effect that these gilts, sows and pigs would remain the property of the plaintiffs and the debtor would care for them and, further, that, from each litter of pigs, when the litter attained a weight of 225 pounds per pig, the debtor was to set aside one pig as the property of the plaintiffs; that, at the conclusion of the time period for which the agreement was to extend, the quantity of gilts, sows and pigs, plus the specified increase, was to be returned to the plaintiffs; that none of the gilts, sows, pigs, or their increase was ever returned; that, according to the testimony of the debtor, they were either sold when he fell into dire economic straits or died or were stolen[1]; and that he never notified the plaintiffs of any intention to sell the gilts, sows and pigs nor did he apprise them afterward of the fact of sale. Rather, they discovered the absence of any gilts, pigs or sows on their own initiative. The debtor does not deny that he intentionally sold the gilts, pigs and sows of the plaintiff, plus their increase, but denies any "intent to harm" within the meaning of the authorities, stating that his lack of any such intent is sufficiently demonstrated by his first selling his own pigs, gilts and sows and only later selling those of the plaintiffs.[2] The plaintiffs have offered evidence tending to show that the value of the 194 breeding gilts and sows and the 17 pigs initially bailed to the debtor was $40,330.00.[3] Plain-

---

1. In his testimony before this court, the defendant has not denied his sale of the chattels belonging to the plaintiffs without authorization of the plaintiffs.

2. In respect of this contention, it was the evidentiary statement of the defendant that he could produce records which would demonstrate the truth of this contention. But a post-trial opportunity granted by the court for the production of such records did not result in the production of any records which would confirm this contention.

3. The testimony of the plaintiff Gordon L. Shafer supports the claim for damages in the complaint to the following effect:

tiffs seek $20,430.00 in additional damages for the "increase" which is allegedly due them under the contracts between the parties. The defendant claims that fewer animals were obtained from the defendant than the 211 claimed and that "he would only be liable for $27,982.50."

### Conclusions of Law

 The plaintiffs request a decree of nondischargeability on the basis of the above facts on the ground of "fraud or defalcation while acting in a fiduciary capacity or an embezzlement or larceny." See § 523(a)(4) of the Bankruptcy Code. But, there is no evidence before the court which would tend to establish that the defendant was a fiduciary. There is nothing in the contracts between the parties which constitutes the "express technical trust" which is necessary to establish fiduciary status. See *Matter of Whitlock,* 449 F.Supp. 1383, 1390 (W.D.Mo.1978). Otherwise, the status of a bailee, without more, does not establish a fiduciary status. "[U]nless there be some additional fact, § 17a(4) [and its successor, § 523(a)(4)] does not apply to frauds of ... bailees." 1A Collier on Bankruptcy ¶ 17.24[4], pp. 1708–1709 (1976). And the uncertain contours of embezzlement and larceny make those species of grounds an unreliable basis for a decree of nondischargeability in this case, when it is unreasonable to assume that they are not intended to lessen the standard of "wilful and malicious conversion."[4]

So the inescapable question squarely before the court is whether the conduct of the defendant was "willful and malicious conversion" within the meaning of § 523(a)(6) of the Bankruptcy Code. This court, in its prior decision in *Matter of Norton,* 21 B.R. 725 (Bkrtcy.W.D.Mo.1982), has pointed out the dichotomy in standards applied on that issue as follows:

"The decisions in this district which have defined 'willful and malicious injury ... to property,' within the meaning of § 523(a)(6), have generally erected a standard whereby the plaintiff must demonstrate a 'subjective, conscious intent' of the defendant to violate the plaintiff's known right to title or possession of the property. See, e.g., *In re Bellmere,* Civil Action No. 79–6042–CV–SJ (W.D.Mo.1980). Even in cases decided before the advent of the new Bankruptcy Code, this standard was applied to excuse the conversion of property when the bankrupt had a 'good faith, even though unreasonable' belief that he might deal with another's property as his own. *Matter of Roberts,* 8 B.R. 291, 297 (W.D.Mo. 1981). This 'subjective' standard of 'willful and malicious' although almost universally rejected by the decisions made under the former Bankruptcy Act, is nonetheless fortified by the legislative history of the new Bankruptcy Code, which rejects the 'objective, reckless disregard' standard which had formerly prevailed. And the cases decided under the new Code, accordingly, tend to forgive the conversion which is alleged unless there can be proven a specific 'intent to harm' the plaintiff. One decision, in applying the 'intent to harm' rule, observes that the rule has little meaningful effect in respect to a case of conversion in which the converter's intent is ordinarily to obtain the money, property or other value converted.

"A few other decisions, noting that the new Code's rejection of the rule of *Tinker v. Colwell,* 193 U.S. 473 [24 S.Ct. 505, 48 L.Ed. 754] (1904), and the 'reckless disregard' standard flowing therefrom did not

---

194 breeding gilts and sows at
$200.00 per head ............ $38,800.00

17 pigs at $90.00 per head ........ 1,530.00

This is further supported by the documentary evidence adduced in the trial of this action.

**4.** In order for larceny to be the grounds of nondischargeability, "the original taking of the

property (must be) unlawful." 2 Collier on Bankruptcy para. 523.14(2), p. 523–106 (1980). Embezzlement usually implies a fiduciary capacity, as a clerk, agent, trustee, public officer, or other person acting in a fiduciary character. See Black's Law Dictionary, p. 614 (4th ed. 1968).

significantly change the law, have continued to apply the pre-Code standard. 'The phrase "willful and malicious injuries to the person or property of another" in 11 U.S.C. § 523(a)(6) do not necessarily connote ill will or special malice. A wrongful act done intentionally without just cause or a lawful basis if sufficient.' *Matter of Friedenberg,* 12 B.R. 901, 905 (Bkrtcy.S.D.N.Y.1981). 'If an act of conversion is done deliberately and intentionally in knowing disregard of the rights of another, it falls within the statutory exclusion even though there may be an absence of special malice.' *In re McCloud,* 7 B.R. 819, 825, 826 (Bkrtcy.M.D.Tenn. 1980). This statement of the law accords with the general law on the subject, including that of the State of Missouri."

■ In this action, when the defendant's actions involved a series of sales prohibited by the nature of the contracts between the parties of chattels which admittedly were the undisputed property of the plaintiff over a period of time, this court believes that the repeated and knowing character[5] warrants application of the *Friedenberg* standard, *supra.* See and compare *Matter of Donny,* 19 B.R. 354, 359 (Bkrtcy.W.D. Wis.1982) ("[N]o case has been found in which a debtor selling property in which he had no ownership interest has been excused on the basis of personal need.") It is therefore found that the sale of the 194 breeder gilts and 17 pigs which were given to the custody of the defendant constitutes a "willful and malicious" conversion within the meaning of § 523(a)(4) of the Bankruptcy Code. (The defendant's claim of a lesser number is not supported by the evidence.) The better, more persuasive evidence of value supports an award of damages in the amount of $40,330.00 as requested by plaintiffs.

■ Otherwise, as to the "increase" which the plaintiff was due under the contracts between the parties, this court holds that to be a contract right which the plaintiffs did not receive by reason of breach of contract. Unless there was some misrepresentation or other fraud at the inception of the contract, the breach is not nondischargeable. There were no specific chattels which could be the subject of conversion.[6] "A mere promise to be executed in the future is not sufficient to make a debt non-dischargeable, even though there is no excuse for the subsequent breach. A misrepresentation by the bankrupt of his intention, however, may constitute a false representation within the exception." 1A Collier on Bankruptcy ¶ 17.16, pp. 1638, 1639 (1976). There is no evidence of any misrepresentation in this action. It is therefore, for the foregoing reasons,

ORDERED, ADJUDGED, AND DECREED that the indebtedness of defendant to plaintiff in the sum of $40,330.00 be, and it is hereby, declared to be nondischargeable in bankruptcy and that the plaintiff have and recover the same sum from defendant.[7]

---

5. The evidence clearly shows that, when the plaintiffs discovered that the chattels were missing and had been sold, the defendant admitted that he should not have sold them. And see *Matter of Norton,* 21 B.R. 725, 729 (Bkrtcy. W.D.Mo.1982), relying on the "relatively long period" through which "successive" misappropriations were made by means of "deliberate" and "calculated" actions as a basis warranting a finding of "willful and malicious conversion."

6. Rather, the "increase" must be classified as a "contract right" which the plaintiffs had. Such an intangible cannot be the subject of a conversion in the ordinary sense.

7. See note 3, *supra.*