**In the Matter of Carl Gene MOORE and Judy Arizona Moore, Debtors.**

**OZARK PRODUCTION CREDIT ASSOCIATION, Plaintiff,**

v.

**Carl Gene MOORE and Judy Arizona Moore, Defendants.**

**Bankruptcy No. 83–00691–SW.**
**Adv. A. No. 83–0608–SW.**

United States Bankruptcy Court, W.D. Missouri, Southwestern Division.

Jan. 17, 1984.

Harold F. Glass, Schroff, Glass & Newberry, P.C., Springfield, Mo., for plaintiff.

R. Deryl Edwards, Joplin, Mo., for defendants.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL DECREE AND JUDGMENT GRANTING THE WITHIN COMPLAINT AS TO THE DEFENDANT CARL GENE MOORE AND ACCORDINGLY ENTERING NONDISCHARGEABLE JUDGMENT AGAINST HIM AND FOR PLAINTIFF IN THE SUM OF $17,906.90

DENNIS J. STEWART, Bankruptcy Judge.

The plaintiff requests in this action that the defendants' indebtedness to it not be discharged in bankruptcy because of the allegedly willful and malicious conversion of a quantity of livestock in which the

plaintiff had a valid and perfected security interest. The issues joined by the pleadings were tried by the bankruptcy court in a plenary evidentiary hearing held on October 28, 1983, in Joplin, Missouri. The evidence then adduced warrants the following findings of fact. The cattle which were the subject of the plaintiff's valid and perfected security interest were last known to be in existence in early 1982. But, after the date of the defendants' bankruptcy, none could be found. In the meantime, the plaintiff's officers' successive inquiries of the defendant Carl Gene Moore as to the existence and location of the cattle had met with increasingly noncommital and evasive answers.[1] When it was discovered after the date of bankruptcy that some of the cattle was no longer in existence, the defendants claimed, as they did in their testimony in the trial of this action, that the greater number of them, some 38 head, were struck and killed by a single bolt of lightning; that their carcasses were then buried in a common grave which Mr. Moore testified that he hired one Arthur L. McIntyre to excavate; that Mr. Moore does not know precisely where the grave is because he was not able to observe it within any reasonable time period after it was opened and re-closed[2]; and that he paid the price of the services involved in excavating the common grave.

Of such substance was the testimony of the defendant Carl Gene Moore in the initial stage of the trial.[3] The plaintiff then presented the testimony of the person whom Mr. Moore had named as the person doing the excavating, Arthur L. McIntyre, who testified that he had never been retained to do any such work and denied knowing anything about it or receiving any payment with respect to it. But then, the defendant Carl Gene Moore, upon being recalled to the witness stand, adjusted his testimony so as to make the claim that it was not really Mr. McIntyre who was retained to dig the grave for the cattle, but rather another person named Rick Hensen, who often did work for Mr. McIntyre, who was retained to do the work and who actually did the work. The testimony of Rick Hensen was not adduced in evidence, but his supposed employer, Mr. McIntyre, clearly testified that he was not aware of any work that this person did for the Moore's in any capacity as his employee.

This testimony and the set of facts evidenced by it clearly and convincingly demonstrates a fraudulent intention of the part of the defendants in their failing and refusing to turn over the cattle to the plaintiff upon demand.[4] The facts of this action

1. Carey Brooks, the assistant vice president of the plaintiff, testified without contradiction that the loans here in question were extended by his organization in 1982 when the defendants represented that they had some 73 head of cattle on hand; that, in late 1982, when he went to the defendants' farm to check on the existence and location of the cattle, he found the defendant Carl Gene Moore very "evasive" and "hostile" and unwilling to exhibit the cattle to him; that, at a later time, at 10 a.m. in the morning, some 21 head of cattle were exhibited to him and he and defendant Carl Gene Moore "walked the entire farm" and did not find any additional cattle, alive or dead; that, still later, in January 1983, he again visited the Moore farm and counted only 13 head of cattle, at which time he asked Mr. Moore whether he sold the other missing cattle and Moore, muttering, replied in the affirmative; that Mr. Moore never said anything to him throughout this period of time about the loss of cattle through being struck by lightning; and that he later learned that such cattle as he was shown during his visits by Mr. Moore was in fact not

Mr. Moore's cattle, but rather was Rick Hensen's cattle.

2. In this regard, Mr. Moore testified that he was not able to get out to the site before the date of bankruptcy and the date of the hearing because he "didn't have time"; that he worked 17 miles from his home driving a school bus and had to leave home at 4 a.m. and did not return until after dark. It seems incredible that he would not have directed where the cattle should be buried and that he would not have known the place of burial, as is further noted in the text of this memorandum, from the person whom he hired to dig the grave and re-close it.

3. The plaintiff called Mr. Moore as a hostile witness at the inception of its case-in-chief. Then it proceeded to call, as its next witness, Arthur L. McIntyre, who Mr. Moore had testified was the person he hired to complete the excavation.

4. "Conversion may be proved in one of three ways: (1) by tortious taking; (2) by any use or

thus clearly answer to the description of wilful and malicious conversion such as is made the basis of a nondischargeable liability by section 523(a)(6) of the Bankruptcy Code.[5] The testimony permits the court only to infer that the cattle in question and their actual disposition were actively concealed by the defendants, not only in the time period leading up to bankruptcy, but, after bankruptcy, in the trial of this action itself, in which the incredible testimony narrated above was rendered, including the self-contradiction as to the identity of the person who was supposed to have dug the mass grave for the deceased cattle. The defendant Carl Gene Moore, as noted above, first unequivocally testified that it was Arthur L. McIntyre who excavated the grave and then, when Mr. McIntyre denied this, altered his testimony to state that it was actually Rick Hensen who performed the excavation. And otherwise the court, considering the defendants' appearance and demeanor as witnesses, does not find their testimony to be credible. It seems particularly unlikely that the situs of the grave, if it exists, can be presently unknown to the defendants who, if such a grave really existed, must know of its location, if by no other means, from the reports of the person who dug the grave. But they have not been able to show officers of the plaintiff where the grave is located. Further, they did not produce, in the hearing of the action at bar, the testimony of Rick Hensen, and it seems likely that they would have produced his testimony had it been likely to be favorable to them.[6]

These principles admit only of the inference of a fraudulent intention in the sense of the intentional violation of the plaintiff's known right to possession of the cattle.[7] The particular facts of this action merit the application of that standard, rather than of a "looser" standard which may not compel the entry of the decree of nondischargeability in this action.[8] For, if the facts of this action do not compel the rendering of a nondischargeable judgment, it is difficult to imagine a case which would come within the provisions of section 523(a)(6) of the Bankruptcy Code.[9]

■ Accordingly, as to the defendant Carl Gene Moore, the court must issue a decree of nondischargeability for a sum equal to the value of the cattle, or otherwise the balance due to the plaintiff, which-

---

appropriation to the use of the person in possession, indicating a claim of right in opposition to the rights of the owner; (3) by refusal to give up possession to the owner on demand." *Breece v. Jett,* 556 S.W.2d 696, 709 (Mo.App. 1977). The current complaint of the plaintiff, if nothing else, constitutes a demand for the livestock or their proceeds. Additionally, see note 1, *supra,* Mr. Brooks testified that he demanded production of the livestock in the course of his January 1983 visit to the Moore farm.

**5.** "In order for an injury to be excepted from discharge under 11 U.S.C. section 523(a)(6), it must be both willful and malicious. Willful has been interpreted to mean deliberate or intentional .... malice ... does not require personal hatred or ill will. Instead, what is required is that the debtor know his act will harm another and proceed in the face of that knowledge." *Matter of Chambers,* 23 B.R. 206, 210 (Bkrtcy. W.D.Wis.1982).

**6.** "When it would be natural under the circumstances for a party to call a particular witness ... and he fails to do so, tradition has allowed his adversary to use this failure as the basis for invoking an adverse inference." McCormick's Handbook of the Law of Evidence sec. 272, pp. 656–657 (2d ed. 1972).

**7.** Ordinarily, "a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury." 3 Collier on Bankruptcy para. 523.16, p. 523–119 (1983). But standards which have been more difficult of proof for the plaintiff have been asseverated. See, e.g., *Matter of Norton,* 21 B.R. 725 (Bkrtcy.W.D.Mo.1981), for a summary of such cases. See also *In re DeRosa,* 20 B.R. 307 (Bkrtcy.S.D.N.Y.1982). But when, in the conduct of the defendant, there has been, as in the action at bar, intentional and repeated or prolonged conduct to frustrate the lienor's rights, the courts have usually held, under either test, that the conversion is willful and malicious. See, e.g., *Matter of Adams,* 24 B.R. 252, 255 (Bkrtcy.W.D.Mo.1982).

**8.** See *In re DeRosa, supra* note 7, at 313; *In re Lewis,* 17 B.R. 46 (Bkrtcy.W.D.Ark.1981). Cf. the considerations stated in note 7, *supra.*

**9.** See notes 1 and 2, *supra.* Cf. note 7, *supra.*

ever is smaller.[10] The evidence that the defendants were indebted to plaintiff in the sum of $17,906.90 as of the date of bankruptcy is uncontradicted, as is the evidence that the cattle which served as collateral were worth about $1,000 per head.[11] Accordingly, judgment must be issued for the smaller amount, $17,906.90.[12]

It is therefore

ORDERED, ADJUDGED AND DECREED that the liability of the defendant Carl Gene Moore[13] to the plaintiff in the sum of $17,906.90 be, and it is hereby, declared to be nondischargeable in bankruptcy. It is further

ADJUDGED that the plaintiff have and recover the same sum from the defendant Carl Gene Moore.

10. "The measure of damages for conversion is the value of the property converted." *Dewey v. American Stair Glide Corp.*, 557 S.W.2d 643, 649 (Mo.App.1977). But, in this case, in which the value of the chattels exceeds that of the balance due to the plaintiff, the plaintiff can be conceived of as having an interest only to the extent of the balance due it.

11. This is according to the testimony of the defendant Carl Gene Moore himself. The bank's officer had a slightly lower opinion of the value of the collateral—$850 per head. But, at either price, the value of the 38 head of cattle said to be lost through electrocution exceeds the balance due to plaintiff. Cf. note 10, *supra.*

12. For the reason that the plaintiff's interest is bounded by this sum, this court need not consider the other contentions of conversion of items other than cattle. See notes 10 and 11, *supra.* And, further, with respect to those items, the evidence of fraudulent intent is not clear and convincing.

13. The judgment must necessarily be only against the defendant Carl Gene Moore. None of the evidence points to any knowledge or intent in this matter on the part of the defendant Judy Arizona Moore, who testified without contradiction of her ignorance of her husband's conduct of the farming operation generally and of the facts in this matter particularly.