In re Stephen James GRESSO, Debbie Lea Gresso, Debtors.

REALTY INVESTMENTS, Plaintiff,

v.

Stephen J. GRESSO, Debbie L. Gresso, Defendants.

Bankruptcy No. 89–31379–RKR.
Adv. No. 89–3126.

United States Bankruptcy Court,
N.D. Indiana,
South Bend Division.

June 4, 1990.

Lee F. Mellinger, Elkhart, Ind., for plaintiff.

William L. Hoehner, South Bend, Ind., for defendants.

## ORDER

ROBERT K. RODIBAUGH, Senior Bankruptcy Judge.

On December 11, 1989, Fred W. Buttell d/b/a Realty Investments ("Realty"), plaintiff, filed his Complaint to Deny Dischargeability of Debt against Stephen James and Debbie Lea Gresso, the debtors, alleging that the sum of $1,680.22 which the debtors owe him is excepted from their discharge pursuant to 11 U.S.C. § 523.[1] The court held a trial on the complaint on May 11, 1990, and took the matter under advisement on the same day.

*Background*

The debtors filed their joint petition under Chapter 7 of the Bankruptcy Code on July 18, 1989. Prior to that time, on November 22, 1988, the Elkhart County Court issued a default judgment in the amount of $1,680.22 plus court costs against the debtors in favor of Realty for damages to Realty's property. In the complaint Realty asserts that this judgment should be excepted from the debtors' discharge as it arises from the willful and malicious injury to Realty's property.

At the May 11, 1990, hearing on this matter Fred W. Buttell testified that he entered into a Lease Agreement for the rental of a house with the debtors on April 10, 1987, and the debtors moved into the dwelling on April 12, 1987. Prior to renting the property to the debtors, Realty completely remodeled the first floor of the home by installing all new appliances, carpeting, and light switches, painting, and making other improvements. The only item that was not replaced was the kitchen cabinets. Raymond Lung, a building inspector for the City of Goshen, Indiana, inspected the home on April 6, 1987, and found that the house met the standards of the Goshen building code and thereafter issued an occupancy permit. Mr. Lung's Case Report made on August 10, 1988, after the Gressos moved out of the home states that the house had been "remodeled and decorated to like new condition" at the time of his initial inspection on April 6,

---

1. At trial Realty indicated that while it received a state court judgment in the amount of $1,680.22 against the debtors, only $1,517.74 of the total was for damages to Realty's property which Realty asserts should be excepted from the debtor's discharge. Realty agrees that $225.00 of the judgment representing the debtor's unpaid rent is dischargeable.

1987, before the Gressos moved in. Mr. Buttell testified that the debtors, along with their two children, ages six and eight, lived in the home for approximately fifteen and a half months. Mr. Buttell went to the home around the tenth of every month to collect the rent, which was often late. In July of 1988 the debtors did not pay the rent, and suddenly moved out on approximately July 31, 1988.

Plaintiff's Exhibit 1 contains eleven pictures of various rooms of the house that were taken within two days after the debtors vacated the premises. Photographs number one shows the bent steel frame of a custom-made storm door, numerous handprints on the doorjamb and frame, and dirt on the wall. Photographs numbers two and three show scratches on the living room wall along with dirt and alleged marijuana smoke stains. On cross examination, Mr. Buttell stated that he did not have scientific testing done to determine whether the stains actually were marijuana. On redirect, however, Mr. Buttell stated that he was an engineer and that he has had experience in trying to paint over marijuana stains in the past. He indicated that when painting over marijuana stains, latex paint bleeds into brown spots, which is what happened when the painters started to paint over the stains which the debtors left. Mr. Buttell stated that he has shown this characteristic to police officers in Elkhart County on a previous occasion regarding a different home. In that instance, the police officers verified that the substance was marijuana residue. Mr. Buttell testified that the stains he found on the walls after the Gressos vacated the premises were the same. Debbie L. Gresso, the wife and co-debtor of Stephen J. Gresso, though, denied that she, her husband, or their friends ever smoked marijuana in the house.

Photograph number four shows an apparently permanent mark on the carpeting from a waterbed and dirt stains outside of the area of the bed in the main bedroom. Mr. Buttell testified that under the Gressos' lease, waterbeds were not allowed, but on cross examination it was shown that the lease was silent as to waterbeds. Plaintiff's Exhibit 4. Mr. Buttell stated that after numerous steam cleanings he was unable to get the imprint out of the carpet. Photographs numbers five and six are of the same bedroom and show scratches, dirt, and cobwebs on the wall.

Photographs numbers seven and eight are of the second bedroom which the debtors' eight-year old son used as his bedroom. The photographs reveal cobwebs and dirt on the baseboard of the wall and stains on the carpeting. Mr. Buttell stated that one of the stains resulted from someone spraying paint on the carpet, although he presented no evidence to prove this allegation. On cross examination, he stated that nothing else in the house had been painted black. Photograph number nine is of the sun porch which the debtors' six-year old daughter used as her bedroom. The photograph displays a broken window and a broken curtain rod. Photograph number ten shows the refrigerator with scratches on its finish. Photograph number eleven is a broken second-story window. Mr. Buttell stated that the debtors were instructed not to use the upstairs because if the upstairs was to be used, in order to comply with the building code, a handrail for the stairs had to be installed. Realty had not installed a handrail. Mr. Buttell also testified that he had no evidence that the debtors were using the upstairs contrary to his instructions.

In his testimony Mr. Buttell referred to additional damage not seen in the pictures. Mr. Buttell stated that the refrigerator was defrosted with a sharp instrument which permanently destroyed the aluminum cooling coil, the finish on the bathroom sink was scratched such that the sink had to be replaced, the "pull" light switch in the bathroom had been pulled too hard and did not work, three of the kitchen drawers were damaged in that the sliding mechanism on the bottom was broken and the backs were pulled out of two of them, and the paneling in the sun room was "gouged." Mr. Buttell testified that he has been in the business of owning and renting dwellings for twelve years and that the damage to his premises in this case was

more than ordinary wear and tear. Mr. Buttell characterized the damage as "deliberate and wanton" based on the fact that he has rented many apartments and none have needed any redecorating for five to seven years because the tenants took care of the property. Mr. Buttell indicated that he was requesting the court to except $1,517.74 from the debtor's discharge as the amount represents the damage done by the debtors' willful and malicious destruction of the property. Plaintiff's Exhibit 2 sets forth the expenses incurred by Realty in repairing the damages. The expenses minus $225.00 which represents the back rent from July 10, 1988, through July 31, 1988, equal the amount of Realty's claim.

Raymond Lung, a City of Goshen, Indiana, building inspector, testified that he inspected the premises at Mr. Buttell's request on August 10, 1988. Mr. Lung has been a building inspector for almost three and a half years, and has inspected 4,000 rental units. In Mr. Lung's opinion someone probably destroyed the bottom of the kitchen drawers by stepping on them (apparently to gain access to the cabinets above). Mr. Lung further concluded that the damaged light shield in the bathroom melted because of improper sized bulbs and that the sink in the bathroom probably was damaged by use of an abrasive cleanser. He believed that the damage to the paneling in the sun room caused by some sort of sharp instrument could not have been an accident. In turn, Mr. Lung indicated that the damage to the front door frame could have been caused by the door standing open without the proper stops and the wind catching the door and bending it. Mr. Lung stated that the carpeting in the bedroom had black spray paint on it and would need to be replaced. Plaintiff's Exhibit 3 at 1 states that all light bulbs were removed from the premises at the time of Mr. Lung's second inspection. In Mr. Lung's opinion, on his second inspection Realty's property which was practically new on April 16, 1987, had been greatly damaged and "the entire house needed to be cleaned and redecorated, due to filthy living habits and neglect." *Id.* Mr. Lung also stated that he thought the conditions in the house demonstrated "more than ordinary wear and tear." ·

Stephen J. Gresso, the debtor, agreed that he did not give Realty notice that he and his family were vacating the premises. He stated that his main reason for moving was lack of money to pay the rent. Also, Mr. Gresso thought that the children in the neighborhood were a bad influence on his children. He believed that the stains on the carpeting in his son's room probably were pop, iced tea, crayons or watercolor paints. Mr. Gresso stated that he never had spray paint in the house and that he had to change the bulb in the bathroom once, although he did not remember the size bulb that he installed. He did not recall if Realty told him he could not have a waterbed.

Debbie L. Gresso testified to the same facts. In addition, she testified that she defrosted the freezer twice while living in the house. To defrost the freezer more quickly she used hot water and a blow dryer, and on the places that had a lot of ice, she used a butter knife. Mrs. Gresso did not know if the freezer worked after the second time she defrosted it because she moved out soon thereafter. Mrs. Gresso stated that she did not use any abrasive or strong cleaners on the kitchen sink because she was allergic to them. The only item that she believed could have scratched the sink was the sponge she used, which was similar to the sponges that are used to clean teflon pans, although she never noticed any scratches. Mrs. Gresso explained that the damage to the paneling in the sun room could have occurred when a "corner stand" was placed in the room for her daughter's toys. Mrs. Gresso further stated that the children and their friends spent a lot of time in their rooms playing, and that she was "not the best housekeeper."

*Discussion and Decision*

■ This Order shall represent findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, made applicable in these proceedings by Bankruptcy Rule 7052. The matter is a core proceeding within the meaning of 28

U.S.C. § 157(b)(2)(I) over which the court has jurisdiction pursuant to 28 U.S.C. § 157(b)(1). The issue is whether the Gressos' debt to Realty stemming from damage to Realty's property should be excepted from their discharge.

Title 11 U.S.C. § 523(a)(6) provides in relevant part:

(a) A discharge ... does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity....

11 U.S.C. § 523(a)(6) (Callaghan 1989). Relief can be afforded under 11 U.S.C. § 523(a)(6) only if the plaintiff proves each and every element by clear and convincing evidence. *First Nat'l Bank of Red Bud v. Kimzey (In re Kimzey)*, 761 F.2d 421, 424 (7th Cir.1985). The exceptions from discharge provided by § 523 are to be construed liberally in favor of the debtor and strictly against the party asserting the exception. *Household Fin. Corp. v. Howard (In re Howard)*, 73 B.R. 694, 700 (Bankr.N.D.Ind.1987) (citing *Eisen v. Linn*, 38 B.R. 762 (9th Cir.B.A.P.1984) and *Lake County Dep't of Pub. Welfare v. Marino (In re Marino)*, 29 B.R. 797 (N.E.Ind.1983)).

■ In order to prevail under 11 U.S.C. § 523(a)(6) Realty must show by clear and convincing evidence that the debtors damaged its property and that their actions in doing so were both willful and malicious. *See Coffing v. Burdick (In re Burdick)*, 65 B.R. 105, 1078 (Bankr.N.D. Ind.1986). The legislative history of § 523(a)(6) of the 1978 Bankruptcy Code states that "willful means deliberate or intentional." S.Rep. No. 989, 95th Cong. 2d Sess. 79 (1978), *reprinted in* U.S.Code Cong. & Ad.News 5765, 5865; H.R.Rep. No. 595, 95th Cong. 1st Sess. 365 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 6320. Collier, in accord with the legislative history, states:

In order to fall within the exception of section 523(a)(6), the injury to an entity or property must have been willful and malicious. An injury to an entity or property may be a malicious injury within this provision if it was wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will. The word "willful" means "deliberate or intentional," a deliberate and intentional act which necessarily leads to injury.

3 Collier on Bankr. (MB) ¶ 523.16[1] (1988). In applying § 523(a)(6) some courts have held that "malicious" requires an actual intent to do harm.[2] Other courts have held that implied or constructive malice is sufficient under § 523(a)(6).[3] Reviewing the legislative history[4] and the split of authority regarding the "malice" requirements, this court previously held in *In re Burdick*, 65 B.R. at 109–110, that a court should look to the totality of the circumstances in order to determine whether the debtor acted with malice.

■ Reviewing the testimony and evidence herein and focusing primarily on the nature of the damages for which the debtors are obligated to Realty, the court concludes that the debt should be excepted from the debtors' discharge. First, the court notes, as set forth above, that when injury or damage is to property, the action may be malicious if the action is wrongful and without just cause. In this case the debtors moved into a newly remodelled home and within only fifteen and a half months caused $1,517.74 worth of damage to the premises. While some of the dam-

---

**2.** *See e.g. Grand Piano & Furniture Co. v. Hodges (In re Hodges)*, 4 B.R. 513, 516 (Bankr.W.D.Va. 1980) and *In re Hinkle*, 9 B.R. 283, 286 (Bankr. D.Md.1981).

**3.** *See e.g. Pioneer Bank and Trust Co. v. Scotella (In re Scotella)*, 18 B.R. 975, 977 (Bankr.N.D.Ill. 1982) and *Barneveld State Bank v. Chambers (In re Chambers)*, 23 B.R. 206, 210 (Bankr.W.D. Wis.1982).

**4.** The legislative history states that to "[t]he extent that *Tinker v. Colwell* [, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904)] held that a looser standard is intended, and to the extent that other cases have relied on Tinker to apply a reckless disregard standard, they are overruled." S.Rep. No. 989, 95th Cong., 2d Sess. 79 (1978), *reprinted in* U.S.Code Cong. & Ad.News 5787, 5865; H.R.Rep. No. 595, 95th Cong., 1st Sess. 365 (1977) *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 6320 (citation added).

ages if looked upon alone might not be considered to be deliberate, wrongful, and without just cause, together the extent of the damages show that the debtors had little or no respect for the property in which they lived. The totality of the circumstances as shown by the evidence and testimony presented herein indicates that the debtors had a total disregard for Realty's property, that their deliberate disregard resulted in damage to Realty's property, and that the debtors still are not ready to admit the damage which they have done.

The court finds the testimony of Fred W. Buttell to be quite credible. Given his experience in owning and renting properties and his testimony concerning the marijuana smoke stains on the walls of the home and ordinary wear and tear, the court concludes that the damages to the home were both willful and malicious. The evidence shows that the damages to the property primarily resulted from the debtors' illegal smoking of marijuana in the home, their inept care of the home, and their failure to supervise their children. Certainly, the debtors' use of illegal drugs in the home was wrongful. Moreover, the evidence shows that the debtors participated in the activity to such a degree that they damaged the walls of the home. Unfortunately, as with the use of other addictive drugs, the debtors' use of marijuana apparently permeated not only their home but the normal course of their lives. The court does not agree that being a poor housekeeper is an adequate excuse for permanently marring the door of the refrigerator, the bathroom sink, and the paneling in the sun room, for destroying the refrigerator coil, for breaking the kitchen drawers, and ruining the carpet of the home. Even if the children caused some of these damages, the actions which caused the damages certainly were deliberate, wrongful, and without just cause.

Mr. Buttell's testimony is buttressed by that of Raymond Lung, the building inspector, who agreed that the damages in the house stemmed from "more than ordinary wear and tear." The debtors' testimony, on the other hand, indicates that in spite of the evidence presented, they are unwilling to acknowledge the extent of their actions. Mrs. Gresso flatly denied that the debtors or their friends smoked marijuana in the home, stated that she never noticed the scratches on the sink, and apparently attempted to attribute the blame for the damages to her housekeeping practices or to her children and their friends. Mr. Gresso, too, admitted that his children may have caused the damage to the carpet but denied that the black stain was spray paint.

Reviewing the totality of circumstances in this case, the court believes that the damages which the debtors caused to Realty's property meet the standard of "willful and malicious injury to property" set forth in 11 U.S.C. § 523(a)(6) and that the debt therefrom should be excepted from their discharge. Specifically, the court concludes that the damages resulted from the debtors' intentional, wrongful conduct rather than from mere negligence, inexperience, or poor judgment. In addition, the court finds that the debtors' conduct and the damages resulting therefrom were without just cause or excuse and therefore were malicious.

*Conclusion*

WHEREFORE, the court, finding that Realty has shown that the debtors' obligation to it in the amount of $1,517.74 should be excepted from the debtors' discharge under 11 U.S.C. § 523(a)(6), now grants Realty's Complaint to Deny Dischargeability of Debt and determines that the obligation is excepted from discharge. It is

SO ORDERED.